STATE, EX REL. WESTERN REFERENCE & BOND ASSOCIATION, INC., RELATOR, V. V. B. KINNEY, RESPONDENT: MILLS TEACHERS AGENCY ET AL., INTERVENERS.

293 N. W. 393

FILED AUGUST 2, 1940. No. 31021.

*Tunison & Joyner,* for relator and interveners.

*Walter R. Johnson, Attorney General,* and *Don Kelley,* for respondent.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

MESSMORE, J.

This is an original action in mandamus. The relator is a private employment agency and seeks to compel the secretary of labor of Nebraska to issue it a license to do busi-

ness as such. The respondent refused to issue a license because relator refused to comply with section 48-508, Comp. St. 1929, fixing the maximum compensation which an employment agency may collect. The respondent's answer seeks to justify the refusal to issue the license for the reason as above stated, and specifically alleges that the business of a private employment agency is vitally affected with a public interest, and the legislature, in the exercise of its police power, can lawfully regulate the maximum fee. A petition in intervention was filed by eight additional agencies, which allege that they operate on the same basis as the relator. By stipulation, the respondent's answer stands to the petitions in intervention. The relator filed a motion for judgment on the pleadings.

By stipulation, the only issue for determination in the cause is the constitutionality of section 48-508, Comp. St. 1929, in so far as the same fixes or limits the fees or compensation for private employment agencies.

The respondent contends that the motion of relator for judgment on the pleadings has the effect of admitting all material facts in the answer.

A motion for judgment on the pleadings admits, either directly or impliedly, the truth of all well pleaded facts in the pleading of the opposing party. Such a motion is in the nature of a demurrer and raises an issue of law only. *Van Etten v. Kosters*, 48 Neb. 152, 66 N. W. 1106; *Webster v. City of Hastings*, 56 Neb. 669, 77 N. W. 127; *Abrahams v. Studebaker Corporation*, 113 Neb. 721, 204 N. W. 786. A motion for judgment on the pleadings does not admit conclusions of the pleader. The allegation in respondent's answer,—that the business of a private employment agency in Nebraska is vitally affected with a public interest,—is a conclusion of law. *State v. Wurdeman*, 311 Mo. 64, 277 S. W. 571; *Newport News Shipbuilding & Dry Dock Co. v. Schauffler*, 303 U. S. 54, 58 S. Ct. 466.

The pertinent part of the statute here involved is as follows: "No licensed person or persons shall, as a condition to registering or obtaining employment for such applicant,

require such applicant to subscribe to any publication or exact other fees, compensation or reward, other than the registration fee, aforesaid, and a further fee, the amount of which shall be agreed upon between such applicant and such licensed person, to be payable at such time as may be agreed upon in writing, 'the amount of which, together with said registration fee of $2.00 added thereto shall in no case exceed 10 per cent. of all moneys paid to or to be paid or earned by said applicant, for the first month's service growing out of said employment furnished by said employer.' " Comp. St. 1929, sec. 48-508.

Relator concedes that a private employment agency is subject to regulation by the state and may be compelled to pay a license fee for the privilege of conducting such business. *Brazee v. Michigan*, 241 U. S. 340, 36 S. Ct. 561; *Ribnik v. McBride*, 277 U. S. 350, 48 S. Ct. 545. Relator's claim is that the part of the statute above set out, fixing the fees and compensation of an employment agency, is in contravention of section 3, art. I of the Constitution of Nebraska, which reads: "No person shall be deprived of life, liberty, or property, without due process of law."

The respondent cites section 9, art. XV of the Constitution of Nebraska, as follows: "Laws may be enacted providing for the investigation, submission and determination of controversies between employers and employees in any business or vocation affected with a public interest, and *for the prevention of unfair business practices and unconscionable gains in any business or vocation affecting the public welfare.* An industrial commission may be created for the purpose of administering such laws, and appeals shall lie to the supreme court from the final orders and judgments of such commission." (Italics ours.)

The respondent's contention is that the language in italics disposes of the relator's challenge, so far as the Nebraska Constitution is concerned; that such provision of the Constitution gives to the legislature authority to enact laws to prevent unfair business practices and unconscionable gains affecting the public welfare.

The language of section 9, art. XV, as above quoted, is clear and comprehensive. In the absence of evidence disclosing that the statute is confiscatory, thereby depriving a person of property without due process of law, the presumption is that on the factual situation the legislature, in enacting section 48-508, Comp. St. 1929, contemplated that such act was in accord with section 9, art. XV of the Constitution. Under the circumstances, we conclude: That part of section 48-508, Comp. St. 1929, objected to, does not contravene section 3, art. I of the Constitution.

Relator further contends that the issue, as stated, contravenes that part of section 1 of the Fourteenth Amendment to the Constitution of the United States, reading .in part: "Nor shall any state deprive any person of life, liberty, or property, without due process of law."

Our attention is specifically called to the case of *Ribnik v. McBride*, 277 U. S. 350, 48 S. Ct. 545, decided May 28, 1928. The New Jersey statute empowered the commissioner of labor to provide a schedule of fees for services to employers seeking employees and persons seeking employment. Discretion with reference to the fees and granting of the license was left to the labor commissioner. All conditions of the statute were conformed to and complied with except the part with reference to the fees as fixed in the schedule and charged therein. The *Ribnik* case is analogous to the instant case, except that the statute in Nebraska fixes the maximum charge. The court in *Ribnik v. McBride, supra,* held: "The business of an employment agent is not one 'affected with a public interest,'" so as to enable the state to fix charges to be made for the service rendered.

"The power to require a license for, and to regulate the conduct of, a business, is distinct from the power to fix prices." In the opinion it was said (p. 355) : "But the question here presented is whether the due process of law clause (of the federal Constitution) is contravened by the legislation attempting to confer upon the commissioner of labor power to fix the prices which the employment agent shall charge for his services." And at page 356, quoting from the

opinion in *Wolff Co. v. Industrial Court*, 262 U. S. 522, 537, 43 S. Ct. 630, 27 A. L. R. 1280, it was said: "It has never been supposed, since the adoption of the Constitution, that the business of the butcher, or the baker, the tailor, the wood chopper, the mining operator or the miner was clothed with such a public interest that the price of his product or his wages could be fixed by state regulation * * * one does not devote one's property or business to the public use or clothe it with a public interest merely because one makes commodities for, and sells to, the public in the common callings of which those above mentioned are instances."

The respondent has cited and analyzed many subsequent decisions to *Ribnik v. McBride, supra,* in an attempt to disclose that the supreme court of the United States has deviated from such decision, to show a general trend therefrom, emphasizing, among other cases, *West Coast Hotel Co. v. Parrish,* 300 U. S. 379, 57 S. Ct. 578, 108 A. L. R. 1330, wherein the case of *Adkins v. Children's Hospital,* 261 U. S. 525, 43 S. Ct. 394, was overruled. The language of the court in *Adkins v. Children's Hospital,* relied on in *Ribnik v. McBride, supra,* appearing on page 356 of that opinion, is as follows:

"In *Adkins v. Children's Hospital,* 261 U. S. 525, this court had under consideration an act of congress fixing minimum wages for women and children in the District of Columbia. The legislation, so far as it affected women, was held invalid as contravening the due process of law clause of the Fifth Amendment, because it was an arbitrary interference with the right to contract in respect of terms of private employment. It was said (p. 546) that while there was no such thing as absolute freedom of contract, nevertheless, freedom of contract was the general rule and restraint the exception; and that 'the exercise of legislative authority to abridge it can be justified only by the existence of exceptional circumstances.' "

The case of *West Coast Hotel Co. v. Parrish, supra,* upheld the statute of the state of Washington in fixing minimum wages for women and minors, and expressly overruled

*Adkins v. Children's Hospital, supra.* Therefore, it is the respondent's contention, a death-blow was delivered to the *Ribnik* case. In any event, that case was not expressly overruled in *West Coast Hotel Co. v. Parrish, supra.*

The respondent also cites *Tagg Bros. v. United States,* 280 U. S. 420, 50 S. Ct. 220. That case involved the enforcement of regulations prescribed by the secretary of agriculture in fixing the fees which commissionmen could charge the seller for handling stock. We believe this situation to be entirely different. The court pointed out the distinction between *Tagg Bros. v. United States,* and the *Ribnik* case, stating, in substance, that in the latter the court did not hold that the charge for personal services cannot be regulated. The question decided by the court was whether the services then attempted to be regulated were vested with a public interest to such extent as to require regulation of the fees an employment agency could charge for services rendered. The *Ribnik* case held that such business was not affected with a public interest to the extent of requiring the fixing of charges. *Tagg Bros. v. United States, supra,* does not overrule *Ribnik v. McBride.*

The respondent also contends that certain language by Mr. Justice Brandeis in *Tagg Bros. v. United States,* in fact, nullifies *Tyson & Brother v. Banton,* 273 U. S. 418, 47 S. Ct. 426, 58 A. L. R. 1236, in so far as such decision is relied upon and cited in *Ribnik v. McBride;* this on the theory that Mr. Justice Sanford, in concurring in the *Ribnik* case, did so on the sole authority of *Tyson & Brother v. Banton,* in that he was unable to distinguish between a labor broker and a theater broker. Respondent implies that the court states: Fixing charges for personal services of brokers is no longer good reason for declaring price-fixing regulations unconstitutional, and respondent reasons that *Tagg Bros. v. United States, supra,* overruled *Ribnik v. McBride* by implication.

The holding in *Tyson & Brother v. Banton, supra,* is set forth in substance in *Ribnik v. McBride,* as follows (p. 358) : "And we since have held definitely that the power to require

a license for and to regulate the conduct of a business is distinct from the power to fix prices. 'The latter power is not only a more definite and serious invasion of the rights of property and the freedom of contract, but its exercise cannot always be justified by circumstances which have been held to justify legislative regulations of the manner in which a business shall be carried on.' *Tyson & Brother v. Banton, supra,* p. 431." The opinion in *Ribnik v. McBride* also states (p. 355) : "And again (p. 438) after reviewing former decisions, it was said that 'each of the decisions of this court upholding governmental price regulation, aside from cases involving legislation to tide over temporary emergencies, has turned upon the existence of conditions, peculiar to the business under consideration, which bore such a substantial and definite relation to the public interest as to justify an indulgence of the legal fiction of a grant by the owner to the public of an interest in the use.' "

The foregoing language is clear on the issue of price-fixing. *Tyson & Brother v. Banton, supra,* has not been overruled by the supreme court of the United States and still constitutes a cardinal part of the law relied upon in the *Ribnik* case.

The respondent relies to a great extent on *Nebbia v. New York*, 291 U. S. 502, 54 S. Ct. 505, which involved the constitutionality of a New York statute, creating a control board to fix minimum and maximum retail prices to be charged by stores to consumers off the premises where sold. The question presented was whether the federal Constitution prohibited the fixing of the price of milk (held to be food by federal decisions and by the Nebraska supreme court). The court upheld the statute.

The respondent asserts that *Ribnik v. McBride, supra,* premised the decision on the following: That the fixing of prices for food and clothing, for house rentals or wages to be paid, whether minimum or maximum, is beyond the legislative power. Referring again to *Nebbia v. New York, supra,* the respondent contends that that case approved the fixing of prices for food, thus dispensing with such reason-

ing in the *Ribnik* case. In the *Nebbia* case the court held: "There is no closed class or category of businesses affected with a public interest, and the function of courts in the application of the Fifth and Fourteenth Amendments is to determine in each case whether circumstances vindicate the challenged regulation as a reasonable exertion of governmental authority or condemn it as arbitrary or discriminatory." (In the instant case there is no contention on the part of the relator that that part of section 48-508, Comp. St. 1929, here objected to, is arbitrary or discriminatory.) In support of its contention in distinguishing the *Nebbia* case, the relator calls attention to the foregoing language.

To clarify relator's distinction between *Ribnik v. McBride* and *Nebbia v. New York,* in the former case, the attempted regulation of the price to be charged by private employment agencies was squarely before the court and held not to be subject to state regulation in such respect. Attention is further called by respondent to the far-reaching effect of the case of *Nebbia v. New York,* in that the court gave a new meaning to the phrase, "affected with a public interest," and concluded such formula was without value in determining the power of the state to regulate a business, thus definitely removing the taboo against price-fixing. Establishing the principle of the character of the business does not prevent the state from regulating prices. The limitation of the test set up by the court is that the legislation must not be arbitrary, discriminatory or demonstrably irrelevant to the policy that the legislature is free to adopt. In the instant case it is true that the relator made no claim that the legislation here objected to on the point at issue was arbitrary, discriminatory or demonstrably irrelevant to the policy the legislature is free to adopt. While the force of this decision is apparent on the issue therein involved, it obviously draws a distinction between a case involving the milk industry and that of a private employment agency. Otherwise, we firmly believe, the supreme court would have overruled *Ribnik v. McBride, supra.*

Respondent cites the case of *Abbye Employment Agency*

*v. Robinson,* 166 Misc. 820, 2 N. Y. Supp. (2d) 947, with reference to a legislative act which fixed the gross fees chargeable to applicants for employment in certain enumerated occupations and common labor of the necessitous class, which, in effect, repudiated the holding in *Ribnik v. Mc-Bride,* and possibly cited for the purpose of disclosing the thought of a New York court on the subject. Nevertheless, the decision is not one by a court of last resort of the state of New York, and not the final word on the subject, so far as that state is concerned, and would, therefore, be of no material value in its effect on *Ribnik v. McBride,* which has not been overruled by the court that rendered the decision.

The respondent cites *Sunshine Anthracite Coal Co. v. Adkins,* 310 U. S. 381, 60 S. Ct. 907, decided May 20, 1940, in which the supreme court of the United States had before it an act providing for the sale and distribution of bituminous coal. The aim of the act was to stabilize the industry primarily through price-fixing and the elimination of unfair competition. The court upheld the act. The effect was to regulate the business of such coal industry in so far as it affected the mining operator, and fixed and regulated the price of the product and the miner's wages. The regulatory provisions were held to be within the power of congress under the commerce clause of the Constitution. The powers of congress under the commerce clause are restricted by the Fifth Amendment in the same manner as the powers of state legislatures are restricted by the Fourteenth Amendment, so what the court has to say as to the one is generally applicable to both.

Respondent cites the foregoing case and specifically calls our attention to the language cited in the *Ribnik* case from *Wolff Co. v. Industrial Court, supra,* as follows: "It has never been supposed, since the adoption of the Constitution, that the business of * * * the mining operator or the miner was clothed with such a public interest that the price of his product or his wages could be fixed by state regulation." *Sunshine Anthracite Coal Co. v. Adkins* refers directly to mining operators and miners. The distinction between the

federal act in the reported cases and the statute under consideration in the instant case is a palpable one and clearly manifested by the provisions of the bituminous coal act, appearing in the opinion, which, if set out, would unnecessarily lengthen this opinion.

We are cognizant of the distinction contended for by respondent in the cases cited and analyzed. The mere fact that certain cases, upon which a decision has been predicated, are either subsequently overruled or the reasoning therein changed or given a new meaning, does not, in fact, overrule such decision. In order to ascertain the full effect and reasoning of a decision, all the language appearing in the opinion to sustain it must be taken into consideration and given equal credence. Cases may be similar and yet not alike. The industries affected by subsequent decisions of the supreme court to *Ribnik v. McBride* are industries distinctively different from the one affected by the *Ribnik* decision. Suffice it to say that no decision from a court of last resort, expressing a view contra to that determined in *Ribnik v. McBride,* has been cited by the respondent.

There is no doubt that the supreme court of the United States has, on account of economic conditions that have supervened, recognized that further exercise of the protective power of the state was required and acted accordingly, taking judicial notice of the existence of unemployment and demand for relief, occasioned by an economic depression. That the country has been faced with a distressing economic depression, in which millions of our fellow citizens have been out of employment and unable to secure it, and in many instances only by the grace of the United States government, is too well known to admit of argument or discussion. While for many years employment agencies have been created by many states, civic and labor organizations, to which those unemployed might resort without charge to them, this field has been vitally enlarged upon by both the federal government and the states, and such other organizations as previously mentioned, to such extent that it is apparent that the business of an employment agency is dis-

tinctively one of a highly competitive nature. An attempt to establish a uniform fee for a valuable service and less valuable service, without the expense of overhead, would seem to be hopelessly impracticable, within the limits of constitutional rights.

The relator is engaged in a beneficial business. Constituting part of its property are services rendered in obtaining employment. One is not obligated, nor is it compulsory, to employ relator, and the person seeking to avail himself of such services is at liberty to reject them, if the terms of the contract for compensation are not satisfactory. This right of contract, common to all followers of legitimate vocations, constitutes an asset of the relator and is a part of the property, in the enjoyment of which relator is guaranteed protection by the Constitution. By that part of section 48-508, Comp. St. 1929, objected to, relator is stripped of the right of contract, deprived of property, circumscribed and hampered in the vocation followed and in the pursuit of livelihood by a provision in an act not applicable in many other occupations.

Speaking of the regulation of the business of relator with reference to fixing prices for services rendered, the relator meets severe competition, and surely such competition is effective in the regulation of fees charged. If the fee be exorbitant or unreasonable, an adequate remedy is provided by law as against the relator and, under the terms of the act, might be very properly exercised.

In view of all argument, the pertinent legal conception is that the supreme court of the United States has not expressly overrruled the case of *Ribnik v. McBride, supra,* and our research confirms this fact. The respondent desires that we march on past the decision in the *Ribnik* case and do the thing that the United States supreme court has not seen fit to do. We cannot logically indulge in speculation, however much we may be impressed with masterly dissenting opinions. We conclude that we are bound by the decisions of the supreme court of the United States in its interpretation of the federal Constitution.

We make reference to *First Trust Co. v. Smith,* 134 Neb. 84, 277 N. W. 762, in which this court held: " 'The United States supreme court and the supreme court of this state are peers. The decisions of the former upon the federal Constitution and laws are binding on the latter; the decisions of the latter upon the Constitution and laws of Nebraska are binding on the former.' *Franklin v. Kelley,* 2 Neb. 79."

Giving effect to *Ribnik v. McBride, supra,* that part of section 48-508, Comp. St. 1929, constituting the issue is unconstitutional, in that it contravenes the due process clause of the Constitution of the United States.

The relator's motion for judgment on the pleadings in such respect is sustained.

It is hereby ordered and adjudged that a peremptory writ should issue, commanding the respondent to issue to the relator a license to operate an employment agency for the year commencing May 1, 1940.

JUDGMENT ACCORDINGLY.

JOHNSEN, J., dissenting.

I am unable to agree with the majority that *Ribnik v. McBride,* 277 U. S. 350, 48 S. Ct. 545, 72 L. Ed. 913, is decisive of the present case.

First of all, the statement of Mr. Justice Brandeis, in the unanimous opinion in *Tagg Bros. v. United States,* 280 U. S. 420, 439, 50 S. Ct. 220, 74 L. Ed. 524, should be noted: "This court did not hold in * * * *Ribnik v. McBride* that charges for personal services cannot be regulated. The question upon which this court divided * * * was whether the services there sought to be regulated were *then* affected with a public interest." (Italics mine.)

The question to be determined here is not whether in 1928, when the *Ribnik* case was decided, the employment agency business was sufficiently affected with a public interest to permit the legislature to limit its charges for services, but whether it is so affected at the present time. "It is clear," says Mr. Justice Roberts, speaking for the majority in *Nebbia v. New York,* 291 U. S. 502, 536, 54 S. Ct. 505, 78

L. Ed. 940, "that there is no closed class or category of businesses affected with a public interest * * *." Or, as Mr. Justice Holmes expressed it in the majority opinion in *Block v. Hirsh,* 256 U. S. 135, 41 S. Ct. 458, 65 L. Ed. 865, "Plainly circumstances may so change in time or so differ in space as to clothe with such an interest what at other times or in other places would be a matter of purely private concern." Mr. Chief Justice Taft gave recognition to the same view, in *Wolff Co. v. Industrial Court,* 262 U. S. 522, 43 S. Ct. 630, 67 L. Ed. 1103, when he classified, as clothed or affected with a public interest, "Businesses which though not public at their inception may be fairly said to have risen to be such and have become subject in consequence to some government regulation. They have come to hold such a peculiar relation to the public that this is superimposed upon them."

With me, the conviction is clear that, if the employment agency business did not hold such a peculiar relation to the public as to permit the legislature to limit its charges for services in the prosperous era of a decade and a half ago, the staggering unemployment problem of the past few years has now placed it in that category. This economic condition is, of course, a proper matter for judicial notice. *West Coast Hotel Co. v. Parrish,* 300 U. S. 379, 57 S. Ct. 578, 81 L. Ed. 703. Today, if not in 1928, the declarations of Mr. Justice Stone, in his dissenting opinion in the *Ribnik* case, are peculiarly applicable and controlling: "We are judicially aware that the problem of unemployment is of grave public concern; that the conduct of the employment agency business bears an important relationship to that larger problem and affects vitally the lives of great numbers of the population, not only in New Jersey but throughout the United States; that employment agencies, admittedly subject to regulation in other respects (*Brazee v. Michigan,* 241 U. S. 340), and in fact very generally regulated, deal with a necessitous class, the members of which are often dependent on them for opportunity to earn a livelihood, are not free to move from place to place, and are often under

exceptional economic compulsion to accept such terms as the agencies offer. * * * There is a public interest at such times in bringing about a prompt readjustment of the labor supply to industry's need for labor. The additional barrier to a quick readjustment created by the agencies' raising of their rates affects that interest adversely. The establishment of a reasonable maximum rate is well calculated to obviate the abuse."

To what extent, in the field of price regulation, the supreme court of the United States has in fact broadened the principle of the *Ribnik* case, in the subsequent decisions of *Tagg Bros. v. United States, supra* (commissionmen's fees), *Nebbia v. New York, supra* (milk prices), *West Coast Hotel Co. v. Parrish, supra* (female minimum wage), and *Sunshine Anthracite Coal Co. v. Adkins,* 310 U. S. 381, 60 S. Ct. 907, 84 L. Ed. 825 (bituminous coal prices), I deem it unnecessary to discuss. These decisions at least have not moved in the direction toward which the *Ribnik* case pointed. For present purposes, it is sufficient to say that the vast economic changes that have occurred since the *Ribnik* case was decided, and the close relationship that employment agencies now bear to the unemployment problem, present such differences in conditions that that decision can no longer be regarded as controlling, and we are entitled to make a new examination of the question. In the necessitous and unequal bargaining position in which the unemployed have come to be placed, it is not unconstitutional to close the doors to any possibility of overreaching or "job selling."

The majority opinion is content to rest upon the ground that the *Ribnik* case has never been expressly overruled. This seems to me too narrow a view of real judicial responsibility. It is not *les majesty* to question the continued existence of the circumstances and conditions upon which a decision of the supreme court of the United States has been predicated, and in such a situation to reexamine the problem that is involved. In some instances this may be the only way in which that court will ever be afforded the oppor-

tunity to review its former decision. It was such a reexamination by the supreme court of Washington of *Adkins v. Children's Hospital,* 261 U. S. 525, 43 S. Ct. 394, 67 L. Ed. 785, and a refusal to recognize it as controlling, that resulted in a review and overruling of it in the subsequent case of *West Coast Hotel Co. v. Parrish, supra.* Judicial decisions must not become mere copybooks, but they should always be present admeasurements of the principles and the spirit of the law. Except as to definite and invariable prescriptions and prohibitions of the Constitution, and such limited rules of property as, in the interest of society as a whole, require a permanent crystallization, past decisions do not establish the finalities of the law, and no sound judicial body will ever deal with them as such. Such decisions necessarily should be employed to measure and test the soundness of judicial thinking, and to safeguard it against transient instability, or the whims of changing personnel, but they obviously can never mark the boundaries to which the thought of the law can extend or its spirit can move.

The majority have properly refused to be guided by the reasoning in the *Ribnik* case in testing the validity of the statute involved under our state Constitution. They have properly held under that instrument that the employment agency business is one "affecting the public welfare." They have inconsistently refused, however, to recognize it as one "affected with a public interest" under the federal Constitution, because they aré unwilling to allow their thoughts in that field to move beyond the boundaries of the *Ribnik* case. I am unable to stop there. The statute in my opinion is violative of neither the state nor the federal Constitution, and the application for a writ of mandamus ought accordingly to be denied.

The reasonableness of the charge fixed by the legislature in the statute is not raised in this proceeding and so is not involved.