GRACE BOOMER ET AL., APPELLEES, V. O. M. OLSEN, SECRETARY OF LABOR OF THE STATE OF NEBRASKA, APPELLANT.

10 N. W. (2d) 507

FILED JULY 9, 1943. No. 31568.

*Walter R. Johnson, Attorney General, John H. Comstock* and *Carl H. Peterson,* for appellant.

*Perry, VanPelt & Marti, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, YEAGER and WENKE, JJ., and TEWELL and LIGHTNER, District Judges.

CARTER, J.

Plaintiffs commenced this suit to enjoin the defendant Olsen, secretary of labor of the state of Nebraska, from enforcing the provisions of section 48-508, Comp. St. 1929, in so far as it attempts to fix the maximum fee to be charged by private employment agencies. The trial court held that the prescribed maximum fee was arbitrary, unreasonable and confiscatory, and therefore unconstitutional. A permanent injunction restraining defendant from enforcing the provisions of the statute relating to the fixing of a maximum charge for the services rendered by plaintiffs was entered and defendant appeals.

The statute in question provides, among other things, that the fee to be charged by an employment agency shall

be the amount agreed upon in writing by the parties, such amount in no event to exceed ten per cent. of all moneys paid to or earned by the applicant for the first month's service growing out of the employment furnished by the employment agency, such fee to include the registration fee of $2 authorized by the statute. It is the contention of the plaintiffs that the statute in so far as it attempts to fix maximum fees to be charged by the plaintiffs is unreasonable, arbitrary, discriminatory, unjust, oppressive and confiscatory, is not regulatory, but is prohibitory in nature and effect, and that said provision is in violation of the Fourteenth Amendment to the Constitution of the United States and of sections 1, 16, 21 and 25, art. I of the Constitution of Nebraska.

The plaintiffs are engaged in operating private employment agencies. They have secured licenses, furnished surety bonds and kept their business records as required by the statute under consideration. The evidence shows that the principal business of these plaintiffs relates to the securing of positions for trained, clerical, sales, executive, technical and professional workers. The evidence also shows that the business is highly specialized and competitive in nature, the success of the business being largely dependent upon the number of voluntary applications obtained and the ability of the agency to render the service which will result in obtaining satisfactory employment for the applicants. The record further discloses that the success of the business is largely dependent upon the education, intelligence, experience and ability of the persons in charge of the business and that it approaches the status of professional service, if it is not in fact such. The evidence is voluminous in support of the claim of these plaintiffs that their work is professional in character in the sense that the knowledge, training, experience and reliability of the management of the agencies are ordinarily of prime consideration to the employer seeking trained employees and the applicant applying for a position requiring special schooling or experience. A recitation of the evidence as to the nature of the business

would unduly extend this opinion, and we consequently content ourselves with the statement of the conclusion reached with respect thereto.

Defendant argues that the issue presented is *res adjudicata* and not therefore a matter for consideration in the case before us. The record shows that the constitutionality of section 48-508 was previously questioned in the case of *State v. Kinney,* 138 Neb. 574, 293 N. W. 393, wherein this court held the act to be violative of the Fourteenth Amendment to the Constitution of the United States on the authority of *Ribnik v. McBride,* 277 U. S. 350, 48 S. Ct. 545, in which the court said: "The business of an employment agent is not one 'affected with a public interest'" so as to enable the state to fix charges to be made for the service rendered. An appeal to the supreme court of the United States resulted in a reversal of this court and a holding that "the drift away from *Ribnik v. McBride, supra,* has been so great that it can no longer be deemed a controlling authority." *Olsen v. Nebraska,* 313 U. S. 236, 61 S. Ct. 862. The effect of this decision is that the Fourteenth Amendment to the Constitution of the United States is no longer a bar to state legislation regulating the business of operating employment agencies, including the fixing of a maximum fee to be charged by such agencies. Defendant contends that the issue now before the court is *res adjudicata* under the theory that a plea of *res adjudicata* applies, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of the litigation, and which the parties in the exercise of reasonable diligence might have brought forward at that time. *Blochowitz v. Blochowitz,* 130 Neb. 789, 266 N. W. 644; *State v. Newman Grove State Bank,* 128 Neb. 422, 259 N. W. 170. It is well-settled law that one may not be permitted to split a cause of action; that if he might have had complete relief in an action which was prosecuted to final judgment he may not again vex his former adversary with another suit based upon the same wrong. *First Nat.*

*Bank of Plattsmouth v. Gibson,* 74 Neb. 232, 104 N. W. 174.
It is just as well settled that one may not present issues for
determination and avoid the effect of an estoppel by with-
holding proof thereof. *Slater v. Skirving,* 51 Neb. 108, 70
N. W. 493. But the foregoing authorities do not control
the present case. The issue in *State v. Kinney, supra,* was
limited solely to the question whether the statute was
constitutional in so far as the same fixes or limits the fees
or compensation of private employment agencies. It was
the power of the legislature to regulate employment agen-
cies and fix maximum fees that was challenged, not the rea-
sonableness of the regulations made. This is shown by a
stipulation of the parties made at the trial of the case and
by a reading of the opinion of this court and that rendered
by the United States supreme court wherein it is specifi-
cally recognized that the reasonableness of the charge fixed
by the legislature in the statute was not raised nor involved
in that action. The very nature of the case as limited by
the stipulation of the parties prevented the consideration
of the issue which is now claimed to have been previously
adjudicated. The defendant, by joining in the stipulation
to limit the issue to the question of the power of the legis-
lature to regulate employment agencies, is in no position to
recede from the effect of his stipulation and to assert an es-
toppel which the stipulation was intended to prevent. A
person is not always required to join in one suit several dis-
tinct and separate causes of action which he may have had
against the same defendant, nor does it mean that the pre-
vious adjudication is conclusive of matters not in issue
where such matters became irrelevant and immaterial by
the stipulation of the parties themselves. The applicable
rule is stated in *Gayer v. Parker & Son,* 24 Neb. 643, 39
N. W. 845, wherein this court said: "A former verdict and
judgment are conclusive only as to the facts directly in is-
sue, and do not extend to facts which may be in controver-
sy, but which rest on evidence and are merely collateral.
It must appear that the matter set up as a bar was in issue
in the former case. The test as to whether the former judg-

ment is a bar generally is, whether or not the same evidence will sustain both the present and the former action." The issue raised in the case at bar is different and the same evidence could not possibly sustain both the present and the former action. Clearly, the plaintiffs are not estopped to assert the issue raised in the present case nor is the defense of *res adjudicata* available to the defendant under the circumstances shown by the record.

The trial court held the provisions of the statute fixing a maximum fee of ten per cent. of the first month's salary to be unreasonable and confiscatory and therefore violative of the constitutional provisions cited. The correctness of this holding is questioned by this appeal.

The operation of an employment agency is a beneficial and lawful business. Whether such business is charged with such a public interest as to warrant its regulation is a legislative question with which the courts ordinarily will not interfere. It is for the legislature to determine whether the possibilities of fraud upon the public and the elimination of harmful trade practices and dishonest dealings with the public are such as to warrant regulation by the state. The legislature having determined this question in the affirmative by the enactment of section 48-508, the courts are bound by such legislative expression. *Nelsen v. Tilley,* 137 Neb. 327, 289 N. W. 388.

The legislature may not, however, under the guise of regulation, impose conditions which are unreasonable, arbitrary, discriminatory or confiscatory. Such regulations must be reasonable, considering the nature of the business, and not such as would prevent the carrying on of the business. *Petersen Baking Co. v. City of Fremont,* 119 Neb. 212, 228 N. W. 256; *Nelsen v. Tilley, supra.* The pertinent question therefore is whether the regulatory provision fixing the fees for the services rendered by the employment agencies is prohibitory or confiscatory.

Six operators of private employment agencies testified and produced their business records indicating that a compliance with the maximum statutory fee would prohibit the

continuance of their business and result in the confiscation of their property rights in the business. Several educators testified to the service rendered by private employment agencies and to the fact that they rendered a needed professional service in the educational field. There is evidence in the record that the Nebraska State Teachers Association discontinued its teachers' employment agency when a fee of two per cent. of the first year's salary failed to pay the expenses of operation. A similar experience was had by the Kansas State Teachers Association. Among the witnesses called by the defendant was the director of the bureau of educational service of the university of Nebraska, a man long experienced in the placing of school superintendents and teachers in positions in the educational field. His testimony is to the effect that if his bureau should be compelled to operate on the fees prescribed by section 48-508, it would result in a substantial loss and a discontinuance of the business. Many other witnesses were called, none of whom testified that a business such as that operated by these plaintiffs could be operated on the maximum fees permitted by the statute. The evidence amply sustains the trial court's finding that the maximum fee fixed by the statute is unreasonable and confiscatory, and consequently void.

The action of the legislature in prescribing a maximum fee for private employment agencies will have the effect of confiscating the business of these plaintiffs. It will have the further effect of placing the business of private employment agencies, such as were operated by these plaintiffs, under the control of the government operated agencies which the evidence shows are now operating in this state. It has the further effect of substituting human judgment for the market place, and the judgment of individuals has never proved to be an adequate substitute for supply and demand. The right to deal with one's property by barter and trade is thereby seriously infringed. The fixing of fees for personal services can only have the effect of limiting the quality of the service below that which the public may desire to purchase. The right to fix the value of person-

al services, even if specialized or professional, is thereby placed under the paternalistic control of a temporary majority. This contravenes the public policy of the state. It is not consistent with our system of private enterprise. The business of these plaintiffs is a lawful and beneficial occupation in which any person may engage by complying with the valid regulations in the act. But the legislature under the guise of regulation cannot properly engage in arbitrary price fixing. A person may still contract for the sale of his services. He may do business with whomsoever he desires and he may likewise refuse business relations with any person if he sees fit. The stifling of a legitimate occupational pursuit by legislative price fixing has been condemned as unconstitutional by this court as being beyond the realm of a regulatory statute. *Nelsen v. Tilley, supra.* We find no reason for receding from this position.

There is no evidence in the record of any fraud being perpetrated on the public, or any complaints that the fees charged by the private employment agencies are exorbitant or unconscionable. But even if the evidence showed that plaintiffs had engaged in unfair business practices and in the making of unconscionable profits, proper regulatory statutes afford a complete remedy without a resort to price fixing. "It has never been supposed, since the adoption of the Constitution, that the business of the butcher, or the baker, the tailor, the wood chopper, the mining operator or the miner was clothed with such a public interest that the price of his product or his wages could be fixed by state regulation. * * * One does not devote one's property or business to the public use or clothe it with a public interest merely because one makes commodities for, and sells to, the public in the common callings of which those above mentioned are instances." *Wolff Co. v. Industrial Court,* 262 U. S. 522, 43 S. Ct. 630. While it is true that the supreme court of the United States has receded from this position in the later cases in interpreting the provisions of the federal Constitution, this court has consistently adhered to the doctrine, except in a business in which the owner by devoting

it to a public use, in effect, grants the public an interest in the use and subjects himself to public regulation to the extent of that interest. Included in the exception are railroads, bus lines, street car lines, and similar businesses in which the extent of the public interest is such as to require protection from duplication and competition, and a fixing of rates and charges as a matter growing out of and reciprocal thereto. But the right to fix prices does not extend to ordinary business pursuits, occupations and professions. We think, therefore, that the legislature may properly prescribe standards, reasonable in their nature, by which a private employment agency may operate, and secure their enforcement by recourse to the courts and by granting licenses upon receipt of a reasonable license fee to those who comply with all the valid regulations of the act.

We hold therefore that the provision fixing the maximum fee to be charged by a private employment agency, to an amount equivalent to ten per cent. of the first month's salary, is unreasonable, prohibitory and confiscatory, and consequently in violation of the cited provisions of our state Constitution. We also hold that a private employment agency is not a business in which the public has such an interest that price fixing may properly be included as a method of regulation under the provisions of our Constitution. The trial court therefore properly restrained the enforcement of the provisions of the act so far as the same purports to fix the maximum fee to be charged by private employment agencies at not to exceed ten per cent. of all moneys paid to or earned by the applicant for the first month's services growing out of said employment. The judgment of the district court is affirmed.

AFFIRMED.