MARTIN JULIUS MISCHKE, PERSONAL REPRESENTATIVE OF THE ESTATE OF STANLEY MISCHKE, DECEASED, APPELLANT, V. GORDON MISCHKE ET AL., APPELLEES.
571 N.W.2d 248

Filed December 5, 1997.    No. S-96-151.

Larry R. Demerath, of Demerath Law Offices, for appellant.

John Thomas for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

CONNOLLY, J.

Martin Julius Mischke, personal representative of the estate of Stanley Mischke (the estate), appeals the findings of the district court for Knox County regarding rents and profits due to the estate for the years 1991 through 1995 following this court's imposition of a constructive trust on property that was converted by Stanley's brother Jerome Mischke under a durable power of attorney. We affirm the trial court's findings regarding rents for the years 1991 and 1992. However, we reverse the trial court's determination of rents for 1993, 1994, and 1995. On issues involving income received from the sale of personal property and horses owned by Stanley, we remand the cause for a determination of the amounts due to the estate. We also remand the cause for determination of taxes paid, if any, by the appellees in 1994 and 1995. The judgment of the district court is therefore affirmed in part, and in part reversed and remanded for further proceedings.

## I. BACKGROUND

This is the second appearance of the parties before this court. Shortly before his death in 1991, Stanley executed a durable power of attorney making his brother Jerome his attorney in fact. While Stanley was unconscious, but before his death, Jerome, as Stanley's attorney in fact, transferred real and personal property to Jerome and his brothers Gordon and Cyrus Mischke (the appellees). The property included an area of land and building site owned by Stanley and Stanley's one-fourth interest in ranchland he owned with the appellees. The appellees claim that they utilized the land as partners under the name "Mischke Hereford Ranch." Following Stanley's death, the estate alleged that the property was unlawfully transferred and sought an accounting. This court ultimately held that the transfers made by Jerome under the durable power of attorney were void ab initio and that the appellees were

> accountable to Stanley's estate not only for all of the property originally transferred to them, but also for any profits that they have made on account of receiving the property or that a reasonably prudent person would have realized from use, or for income from the fair market value of the property, whichever is greater.

*Mischke v. Mischke*, 247 Neb. 752, 760, 530 N.W.2d 235, 241 (1995). This court modified the district court's judgment and remanded the cause for further proceedings.

On remand, the estate sought to recover rents and profits relating to the appellees' use of the property. The estate also sought to recover additional amounts of money for the value of personal property and horses that were sold by the appellees. Without objection, the trial court took judicial notice of the bill of exceptions and order in the original action.

### 1. TRIAL STIPULATION AND PAYMENT OF JUDGMENT

In the original trial on the matter, the parties stipulated to the existence and value of Stanley's property. The portion of the stipulation regarding the ranch shared by Stanley and the appellees was adjusted by agreement of the parties for all farming operations, expenses, sales, and rental income from July 26, 1991, to April 6, 1993. These adjustments included income from cow-calf rentals on the ranch pastureland and fully reflected all income for the property. Sections of the stipulation pertaining to bank accounts listed a value that was agreed upon by the parties. However, the value of household furnishings, farm equipment, and miscellaneous property was not agreed on and was left blank.

While the first appeal was pending, the appellees paid to the clerk of the trial court a sum they represented to be the value of the household furnishings and ranch equipment based upon an appraisal. The estate accepted the money from the clerk of the district court a few days later and cashed the check. Of the amount paid, $8,722.03 was represented as the value of the personal property and Stanley's one-fourth interest in the ranch equipment with interest. Testimony indicated that the appellees believed the property had been purchased from the estate.

### 2. HOUSEHOLD FURNISHINGS AND RANCH EQUIPMENT

On remand, the estate presented evidence that the property had been sold at auction in November 1995 for a much larger amount than as appraised by the appellees. The appellees' appraisal of the property showed the value of household furnishings as $4,342.50 and the value of ranch equipment as $15,890. However, the auction brought in gross proceeds of

$101,589, which accounted for $95,456.17 in proceeds to the appellees after costs. One of the reasons for the disparity in value was that certain items of property had been mischaracterized and undervalued by the appraiser. For example, a table described as "veneered" and appraised at $375 turned out to be oak and sold at auction for $2,700. However, the appellees presented evidence that they had included some of their own property in the auction, some of which sold for upward of $6,000. In addition, there were many small items sold at the auction that were not listed in the appraisal.

### 3. HORSES

The estate presented evidence that a number of horses had been sold and that these horses did not belong to the ranch "partnership" shared by Stanley and the appellees, but belonged to Stanley exclusively. Testimony on remand showed that prior to the first litigation, one of the appellees was served with an interrogatory asking for a listing of property owned by the "partnership" and that the appellee answered, "[N]ine horses." However, in a 1992 deposition, the same appellee indicated that Stanley owned some horses. Records pertaining to the ranch "partnership" indicated that the horses were ranch property.

At the hearing on remand, although Jerome testified that he had not had any dealings with the American Quarter Horse Association or the American Quarter Horse Society, the estate presented documents showing that he had written these associations at the time of Stanley's death, seeking to transfer ownership of the horses to the "partnership." These documents were admitted into evidence for impeachment purposes. Based on the testimony and evidence, the estate argued that it was entitled to 100 percent of the proceeds from the sale of the horses instead of a one-fourth proportionate share.

### 4. RENTS AND PROFITS

In order to show rents and profits, the estate presented an expert witness who testified that the fair rental value of the property was $60 to $65 per acre for cropland, $30 to $35 per acre for hayland, and $20 to $25 for pastureland. An expert witness for the appellees also testified to these figures, stating that the fair rental value was $60, $30, and $20 for cropland, hay-

land, and pastureland respectively. The estate's expert testified there would normally be an interest charge of around 18 percent for any late payments, but the appellees' expert stated that he did not know if interest charges for late payments were common. The estate's expert also estimated that the rental value of the building site on Stanley's property was between $100 and $250 per month, but noted that the value could vary quite a bit and stated he was just "throwing out some figures there."

The estate also put into evidence admissions by the appellees regarding the actual rent for the ranch pastureland. This was the actual amount of cow-calf rent the appellees received for pasturing cattle on the property. Neither party introduced any other evidence of actual rents and profits. Further testimony indicated that taxes had not been paid for Stanley's land in 1994 or 1995 and that the parties had reached an independent agreement concerning rents for 1995.

## 5. DISTRICT COURT RULING

The trial court, referring to the stipulation and a defendant's statement of compliance with the trial court's order, held that all property issues, other than an accounting for the use of real estate from the void transfer, were determined by the original trial and were res judicata. In particular, the court stated that all issues of who owned what property and rents, profits, or income up to April 6, 1993, had been decided at the original trial by the stipulation. The court further stated that the estate had accepted and been paid for the personal property of Stanley and that it could not again raise the issue of value by showing a disparity between the appraised value, agreed upon by the parties, and the actual value at the time of sale. The court found that the fair rental value for 1995 was $13,507 based on an independent agreement of the parties. The court then held: "The issue that remains to be decided is the amount of profits the defendants have made on account of receiving the real estate, or that a reasonably prudent person would have realized from use, or for income from the fair value of the property, whichever is greater."

The trial court determined that the fair rental value of the property was $18,207 for 1993, with a deduction of $5,853 for

tax expenses, resulting in a net rent of $12,354. For 1994, the trial court determined that the fair rental value was $20,768, with a tax deduction of $5,951, resulting in a net rent of $14,817. The trial court further determined that because the appellees owned 30 percent of the land by reason of their inheritance from Stanley, this percentage was deducted from the sum owed to the estate for rents and profits for 1993 through 1995.

## II. ASSIGNMENTS OF ERROR

Rephrased, the estate assigns that the trial court erred in (1) allowing the appellees to amend the record on appeal; (2) holding that all property issues other than an accounting for the use of real estate were res judicata; (3) holding that the parties had agreed on the value of all personal property; (4) holding that the issue of who owned which items of personal property was determined in the original trial by exhibit 121; (5) holding that res judicata applied to the matter of rents, profits, or income from the property up to April 6, 1993; (6) calculating the rents due to the estate for the years 1993, 1994, and 1995; and (7) setting off 30 percent of the award to the appellees.

## III. STANDARD OF REVIEW

In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Midlands Rental & Mach. v. Christensen Ltd.*, 252 Neb. 806, 566 N.W.2d 115 (1997); *Hanigan v. Trumble*, 252 Neb. 376, 562 N.W.2d 526 (1997).

## IV. ANALYSIS

The estate contends that the trial court improperly took judicial notice of the bill of exceptions and order from the original case and that the bill of exceptions was improperly amended to include these items. However, the estate did not object at the time judicial notice was taken, even after the trial judge asked if there was an objection.

Failure to make a timely objection waives the right to assert prejudicial error on appeal. *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996); *Schiffern v. Niobrara Valley Electric*, 250 Neb. 1, 547 N.W.2d 478 (1996); *Barks v. Cosgriff Co.*, 247 Neb. 660, 529 N.W.2d 749 (1995); *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993). In addition, the bill of exceptions may be amended at any time prior to the submission of the case to this court. Neb. Ct. R. of Prac. 5B(5) (rev. 1996).

Because the estate did not object to the trial court's taking judicial notice of the previous case and order, the estate has waived any right to assert the judicial notice as error on appeal. In addition, rule 5B(5) has been complied with. Therefore, the estate's first assignment of error is without merit.

The estate next assigns as error the finding of the trial court that the stipulation from the original proceeding determined the issue of ownership of property. The estate further assigns as error the findings that the parties had agreed on the value of personal property and that the issue of the value of personal property was res judicata. Basic principles of res judicata and constructive trusts apply to arguments made by the parties throughout this case. Accordingly, a review of these principles is helpful in understanding the issues.

A constructive trust has been defined as:

> " 'a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property.' "

*Fleury v. Chrisman*, 200 Neb. 584, 588, 264 N.W.2d 839, 842 (1978), quoting *Box v. Box*, 146 Neb. 826, 21 N.W.2d 868 (1946). This court has said: " 'An agent or other fiduciary who deals with the subject-matter of the agency so as to make a profit for himself will be held to account in equity as trustee for all profits and advantages acquired by him in such dealings. . . .' " *Vogt v. Town & Country Realty of Lincoln, Inc.*, 194 Neb. 308, 321, 231 N.W.2d 496, 504 (1975). Accord, *Schepers v. Lautenschlager*, 173 Neb. 107, 112 N.W.2d 767 (1962). An agent may not retain anything acquired by him in either the per-

formance or the violation of his agency and will be held accountable for the value of property that is converted. *Schepers v. Lautenschlager, supra.* In *Vogt v. Town & Country Realty of Lincoln, Inc., supra,* a case involving constructive fraud, the measure of damages was the loss which the plaintiff suffered as a consequence of the defendant's breach of fiduciary duties. The law will not permit an agent to place himself in a situation where he might be tempted by his own private interest to disregard that of the principal. *Schepers v. Lautenschlager, supra.*

Furthermore, the beneficiary of a constructive trust is entitled to follow and recover the proceeds resulting from the sale of its property. *Corn Belt Products Co. v. Mullins,* 172 Neb. 561, 110 N.W.2d 845 (1961). In addition, a constructive trustee must account for the rents and profits received on property held in the trust. *I. P. Homeowners v. Radtke,* 5 Neb. App. 271, 558 N.W.2d 582 (1997).

In regard to res judicata, it is well-settled law that a party may not split a cause of action. If a party might have had complete relief in an action which was prosecuted to final judgment, he may not again vex his former adversary with another suit based upon the same wrong. *Boomer v. Olsen,* 143 Neb. 579, 10 N.W.2d 507 (1943). It is just as well settled that a party may not present issues for determination and avoid the effect of an estoppel by withholding proof thereof. *Id.*

Except in special cases, the plea of res judicata applies not only to points upon which the court was actually required by the parties to form an opinion, but to every point which properly belonged to the subject of litigation and which the parties exercising reasonable diligence might have brought forward at the time. *Thomas v. Weller,* 204 Neb. 298, 281 N.W.2d 790 (1979); *Wischmann v. Raikes,* 168 Neb. 728, 97 N.W.2d 551 (1959).

## 1. PERSONAL PROPERTY

The estate contends that the stipulation of the parties was intentionally left blank with regard to the value of personal property and farm machinery and, thus, that there is no agreement and no res judicata. However, the appellees argue that because the estate accepted money paid in satisfaction of the judgment, the estate is barred from raising the issue of the value of that property under principles of accord and satisfaction.

## (a) Accord and Satisfaction

An accord and satisfaction is a discharge of an existing indebtedness by the rendering of some performance different from that which was claimed as due and the acceptance of such substituted performance by the claimant in full satisfaction of the claim. *Lone Cedar Ranches v. Jandebeur*, 246 Neb. 769, 523 N.W.2d 364 (1994). To constitute an accord and satisfaction, there must be (1) a bona fide dispute between the parties, (2) substitute performance tendered in full satisfaction of the claim, and (3) acceptance of the tendered performance. *Id.* The key element of accord and satisfaction is the intent of the parties. *Id.*

It is not evident from the record what the intent of the parties was when the payment of the judgment was accepted by the estate, nor is there evidence that the payment of judgment and the acceptance of the money constituted a substitute performance of the appellees' obligations. Thus, the principles of accord and satisfaction are inapplicable to this case.

## (b) Res Judicata

The issue of the value of personal property is not res judicata because the parties did not stipulate to the value of the property in the first proceeding. Furthermore, the purpose of the first proceeding was not to determine the value of the property. Rather, it was an action to determine ownership of the property and to compel the appellees to give an accounting. Thus, the value of personal property was not an issue either actually litigated or that could have been litigated in the first proceeding.

Having determined that the issue is not barred by res judicata and accord and satisfaction, we next address whether the estate is entitled to the money the appellees realized from the property when they sold it several years after paying the appraised value of the property. The appellees assert that by paying the judgment, they purchased the personal property from the estate and, thus, were free to do as they pleased with it. The estate argues that the appellees bought the property at a reduced rate and then later resold it for a substantial profit. While it is not clear from the record that any fraud was involved, it is clear that several items of property were misdescribed and undervalued by the appraiser and then resold at significantly greater prices.

Under constructive trust principles, the wrongdoer holds the property in constructive trust for the benefit of the beneficiaries based on the principle that the wrongdoer cannot be allowed to benefit from his improper actions. More specifically, the constructive trust in this case was imposed following the breach by an agent in a fiduciary relationship. The rules are clear that the agent cannot be allowed to keep any advantage gained from his breach of fiduciary duty and that the fiduciary can follow the proceeds of property held in constructive trust. Under these principles, the appellees cannot keep additional money earned when they sold Stanley's personal property. To allow otherwise would amount to unjust enrichment, because but for the breach of fiduciary duty, the appellees would have never been in the position to sell the personal property.

The estate contends it is entitled to the difference between the appraised value of the property and the gross proceeds generated at the auction. However, the record indicates that the appellees sold some items of their own at the auction. It is possible that a substantial portion of the gross proceeds from the auction could legitimately belong to the appellees. Because the record is unclear regarding the ownership of each piece of property sold at the auction and the amount of income received from the sale of specific pieces of property, we remand the cause for a determination of the amount of income generated from the sale of property that was owned by Stanley.

### 2. Horses

The appellees argue that the estate's claim for 100 percent of the earnings from the sale of horses is res judicata and, as discussed previously, that principles of accord and satisfaction apply. The horses are not specifically listed in the stipulation of the parties. However, from the record it is not clear whether the value of the horses was considered by the parties when they stipulated to the value of the ranch property.

It is true that at the first trial, the ownership of various items of property, including the horses, could have been litigated. However, the record reflects that a number of horses were registered to Stanley through the American Quarter Horse Association and were transferred to the appellees following Stanley's death. Because this court previously held in *Mischke*

*v. Mischke*, 247 Neb. 752, 530 N.W.2d 235 (1995), that the appellees hold the property in constructive trust that they wrongly obtained, this court will not allow the appellees to benefit from their conversion of Stanley's property. Principles of equity dictate that the appellees cannot be unjustly enriched by their wrongful actions. Thus, if the horses were exclusively owned by Stanley, the estate is entitled to the total amount of income generated from their sale. The issue regarding the amount due to the estate from the sale of horses is remanded for a determination of the number of horses sold that were owned by Stanley and the amount due to the estate from the sale of these horses.

### 3. RENTS AND PROFITS

The trial court found that the issue of rents and profits for the use of real estate for the years 1991 through April 6, 1993, was res judicata and had been previously agreed on by the parties in their stipulation. The court further found that the issue of rents and profits for 1995 was determined by an independent agreement of the parties. Therefore, the trial court determined rents and profits only for the years 1993 and 1994. The estate argues this was in error. In particular, the estate argues that because this court in *Mischke v. Mischke*, 247 Neb. at 760, 530 N.W.2d at 241, stated that the estate was entitled to "any profits that [the appellees] have made on account of receiving the property or that a reasonably prudent person would have realized from use, or for income from the fair market value of the property, whichever is greater," the court specifically threw out or ignored the stipulation of the parties. Based on this argument, the estate contends it is entitled to the greater amount of rents and profits, this being the amount it is now requesting, rather than the amount stipulated to for the years 1991 and 1992 in the original trial. The estate further claims that the trial court was in error in calculating rents and profits for 1993 and 1994. Finally, the estate asserts that it is entitled to the "greater" amount of rents for 1995.

### 4. 1991 AND 1992

We affirm the finding of the trial court that the issue of rents and profits for 1991 and 1992 is res judicata.

> "[S]tipulations voluntarily entered into between the parties to a cause or their attorneys, for the government of their conduct and the control of their rights during the trial or progress of the cause, will be respected and enforced by the courts, where such stipulations are not contrary to good morals or sound public policy. Courts will enforce valid stipulations unless some good cause is shown for declining to do so, especially where the stipulations have been acted upon so that the parties could not be placed in status quo. . . ."

*In re Estate of Mithofer*, 243 Neb. 722, 726-27, 502 N.W.2d 454, 457-58 (1993), quoting *Martin v. Martin*, 188 Neb. 393, 197 N.W.2d 388 (1972). Parties are bound by stipulations voluntarily made, and relief from such stipulations after judgment is warranted only under exceptional circumstances. *Id.*

It is clear from the record that the parties worked together in preparing their stipulation regarding the value and profits of both Stanley's land and the ranchland. It is also clear that the parties worked together in adjusting the figures so that the values shown would include rents and profits from the appellees' use of the land. The record further indicates that actual profits, rather than fair rental value, were used. Based on these facts, there is no reason in this case to ignore the prior agreement of the parties. Thus, the issue of rents and profits for the years 1991 and 1992 is res judicata.

## 5. 1993 AND 1994

The trial court based its determination of rents and profits for 1993 and 1994 on the fair rental value of the property. The estate argues this was in error because it does not reflect the "greater" amount of rents and profits that can be figured as set out in *Mischke v. Mischke*, 247 Neb. 752, 530 N.W.2d 235 (1995). The appellees contend that the trial court was correct in using fair rental value as the measure for all parcels of land. However, the estate seeks to recover actual cow-calf rentals for the ranch pastureland. In addition, the estate raises issues regarding the determination of the fair rental value of several pieces of real property, the interest on rents and profits as a late charge, the valuation of the building site, the payment of taxes, and the trial court's deduction of 30 percent from the net rent

due to the estate because of the court's determination that the appellees were 30 percent heirs to the land.

### (a) Mixing Actual Rents and Fair Rental Value

The record reflects that actual cow-calf rents on the ranch pastureland exceeded the fair rental value of that land. In light of the principles governing constructive trusts, it would be inequitable to not allow the estate to recover for actual rents where those rents are known to be greater than the fair rental value of the property. To allow the appellees to limit their liability to fair rental value, rather than what they actually received, would amount to allowing them to earn a windfall from their wrongful conduct. This, equity will not allow. As stated in *Schepers v. Lautenschlager*, 173 Neb. 107, 112 N.W.2d 767 (1962), an agent who breaches a fiduciary duty cannot profit from that breach.

### (b) Determination of Fair Rental Value

The trial court found that the fair rental value of the property was $18,207 for 1993, with a deduction of $5,853 for tax expenses, resulting in a net rent of $12,354. Although the stipulation of the parties included rents and profits up to April 1993, the figures presented by the appellees and accepted by the trial court include rents and profits for all of 1993. The parties do not dispute this, and both sides argue for an amount of rents and profits based on 1993 as a whole. For 1994, the trial court determined that the fair rental value was $20,768, with a tax deduction of $5,951, resulting in a net rent of $14,817. This accounts for a finding of $60 per acre for cropland, $30 per acre for hayland, and $20 per acre for pastureland. This net rent figure also allows for a fair rental value for the building site of $100 per month.

The expert testimony of both parties supported the figures of $60, $30, and $20 per acre for cropland, hayland, and pastureland, respectively. However, the estate requests that all parcels of land, other than the pastureland where actual rents are known, be valued at a fair rental value of $60 per acre. The estate contends this is the amount the parties agreed to in a 1995 agreement in which the estate rented the property to the appellees. Thus, the estate argues that because the parties

agreed to this amount in 1995, it must reflect the fair rental value of the property for 1993 and 1994. However, the expert testimony placed different values on the land according to different classifications.

The estate further argues that the $60 per acre rental figure for all parcels of land is supported by the testimony of its expert witness. However, this is clearly wrong. The estate's expert clearly testified on cross-examination that the cropland, hayland, and pastureland were worth $60, $30, and $20 per acre, respectively. The estate further requests that $175 per month be applied as the fair rental value of the building site, rather than the $100 per month applied by the trial court.

In an appeal of an equitable action, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Midlands Rental & Mach. v. Christensen Ltd.*, 252 Neb. 806, 566 N.W.2d 115 (1997); *Hanigan v. Trumble*, 252 Neb. 376, 562 N.W.2d 526 (1997); *Siffring Farms, Inc. v. Juranek*, 252 Neb. 150, 561 N.W.2d 203 (1997). Accordingly, in our de novo review, we give weight to the fact the trial judge heard and saw the expert witnesses in the instant case and conclude that the trial judge was correct in determining the fair rental value of the various properties.

### (c) Interest

In its brief, the estate argues for interest on rents and profits because its expert testified that under a cash rental agreement, there is a late-charge interest rate of 18 percent. However, the record reflects little evidence regarding the appropriate interest rate and does not cite to any legal authority that the estate is entitled to interest on the rents as a late charge. Nor does the estate specifically assign as error a denial of interest by the trial court, and the record does not indicate there was a contract between the parties for interest.

Errors which are argued but not assigned will not be considered by an appellate court. *Boettcher v. Balka*, 252 Neb. 547, 567 N.W.2d 95 (1997); *Daehnke v. Nebraska Dept. of Soc. Servs.*, 251 Neb. 298, 557 N.W.2d 17 (1996); *Pantano v. McGowan*, 247 Neb. 894, 530 N.W.2d 912 (1995); *Wolf v. Walt,*

247 Neb. 858, 530 N.W.2d 890 (1995); *Manske v. Manske*, 246 Neb. 314, 518 N.W.2d 144 (1994). Accordingly, the estate is not entitled to interest as a late charge on the rents and profits due to it.

### (d) Taxes

The trial court deducted expenses for taxes from the amount due to the estate. However, the estate argues that because there was testimony that taxes were not paid for Stanley's property in 1994 and 1995, such a deduction was in error for those years. If taxes have never been paid by the appellees for these years, that assertion is correct. See *III Lounge, Inc. v. Gaines*, 227 Neb. 585, 419 N.W.2d 143 (1988) (if plaintiff is awarded rents or profits, plaintiff will also be liable for expenses associated with obtaining those profits, such as taxes). It is unknown from the record whether the appellees ever paid the 1994 and 1995 taxes. Accordingly, we remand this issue to the trial court for a determination of whether or not the appellees actually paid the taxes in these years.

### (e) Thirty-Percent Setoff

The trial court deducted 30 percent from the award to the estate for 1993 and 1994 on the basis that the appellees were 30-percent heirs to the property. This setoff was in error.

The county court has exclusive original jurisdiction of all proceedings regarding a decedent's estate. Neb. Rev. Stat. § 24-517(1) (Reissue 1995). To the extent permitted by the Nebraska Constitution, the county court has jurisdiction over all subject matter relating to estates of decedents, including the determination of heirs. Neb. Rev. Stat. § 30-2211 (Reissue 1995). Title to real property passes immediately on death to devisees or heirs, subject to administration. Neb. Rev. Stat. § 30-2401 (Reissue 1995). The passage of title to the heirs does not require settlement of the estate or a probate order declaring heirship to vest title. *Brtek v. Cihal*, 245 Neb. 756, 515 N.W.2d 628 (1994).

The personal representative has the right to take possession and control of the decedent's real property. Neb. Rev. Stat. § 30-2470 (Reissue 1995). However, real or personal property may be left with or surrendered to the person presumptively

entitled to it unless or until, in the judgment of the personal representative, possession of the property will be necessary for purposes of estate administration. *Id.* The request by a personal representative for delivery of any property possessed by an heir is conclusive evidence, in any action against the heir for possession of the property, that the property is necessary for estate administration. *Id.*; *In re Estate of Kesting*, 220 Neb. 524, 371 N.W.2d 107 (1985); *Neylon v. Parker*, 177 Neb. 187, 128 N.W.2d 690 (1964). In *Neylon*, this court held that where there was litigation involving the rights of a husband to inherit, it was necessary for an estate administrator to collect rents to protect the estate until a determination of heirship was made.

The estate in this case made a demand for surrender of all estate property wrongly transferred to the appellees. Under the Nebraska statutes, such a demand is considered conclusive proof that the property is necessary for estate administration. Furthermore, under the trial court's original order, affirmed by this court, the appellees hold all property transferred in constructive trust for the benefit of the estate. It would be illogical to conclude that the appellees hold all but 30 percent of that property in constructive trust.

The appellees contend that because the estate has not specifically requested possession of their 30-percent share, the property is not necessary for estate administration. However, the subject of the lengthy litigation in this case has been the ownership of the property and the estate's entitlement to rents and profits from that property, and the appellees were previously ordered to transfer that property to the estate. Regardless of how the estate framed its request for possession of the appellees' 30-percent share, possession of the property is both necessary for purposes of estate administration and required by the county court. Accordingly, the 30-percent setoff applied by the trial court was in error.

In summary, the estate is entitled to recover the fair rental value for the property as decided by the trial court for all property except where the actual rents were shown to be greater than the fair rental value. The figures presented by the parties contain some mathematical errors. When corrected for these errors, adjusted to include the actual rents received on the pastureland,

and not including a deduction for the 30-percent share, the estate is entitled for 1993 to $21,621.60, less a tax expense of $5,853, for a total of $15,768.60. For 1994, the estate is entitled to $23,487.53, less Stanley's share of the "partnership" real estate amounting to $1,087, for a total of $22,400.53. If it is determined that the appellees paid taxes on Stanley's property for 1994, the amount of the taxes paid should be subtracted from this total.

## 6. 1995

The record indicates that following our decision in *Mischke v. Mischke*, 247 Neb. 752, 530 N.W.2d 235 (1995), the parties reached an independent rental agreement for the year 1995 whereby the estate agreed to rent the property to the appellees. We affirm the trial court's determination that the fair rental value of the property for 1995 was the amount decided by the parties in this agreement. The estate requests $10,193.28 more than the trial court award. This difference is due largely to the facts that the trial court subtracted 30 percent from the estate's award and that the estate requested a higher fair rental value than the figure used by the trial court. Although their 1995 agreement indicated the estate would pay a one-fourth share in the repair of a well, the estate does not account for this expense in its calculations. The estate is not entitled to reimbursement for expenses it already agreed to pay. Furthermore, testimony indicated that such a repair would commonly be paid for by the landowner. In addition, as previously stated, we find that the fair rental value of the property was correctly determined by the trial court. However, the court should not have deducted 30 percent from the gross amount due to the estate. Thus, the estate is entitled to $19,295.48 for the year 1995, rather than $13,506.84 as awarded by the trial court. If the appellees paid taxes on Stanley's property for 1995, the amount of tax paid should be deducted from this total.

## V. CONCLUSION

The estate is entitled to rents and profits as calculated for 1993, 1994, and 1995. The cause is remanded for a determination of the amounts due to the estate, if any, from the sale of Stanley's property at auction and the sale of the horses, and a

determination of the amount of taxes, if any, paid by the appellees in 1994 and 1995.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.