GERALDINE SCHWARTING, APPELLEE, V. ERVIN SCHWARTING, APPELLANT.

62 N. W. 2d 315

Filed January 29, 1954. No. 33421.

Leonard A. Hammes, for appellant.

Hosford & Kanouff, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellee alleged as a cause of action for absolute divorce from appellant that they were married on December 3, 1934; that they were residents of Douglas County, Nebraska; that they had no children; and that in recent years appellant had committed acts towards appellee that destroyed the purposes of matrimony and entitled her to a divorce on the ground of extreme cruelty as follows: Appellant argued with her without cause; embarrassed her before mutual friends; criticized her without cause; improperly associated with other women; stayed away from their home at night without appellee knowing where he was; drank regularly; and the parties were generally incompatible. Appellant admitted the marriage and that they had no children; denied the other charges made by appellee; and alleged that she in 1943 accepted employment and had since worked at the Music Box in Omaha, a public dance hall with bowling alleys;

that she became interested in her employment to the extent that she preferred to be at the dance hall and bowling alleys during business days and Sundays rather than to do household duties; that she lost all interest in her home and refused to discontinue her employment; and that on June 20, 1952, she left her home and separated from appellant and has since resided at the Princeton Apartments in the immediate vicinity of the Music Box.

The findings of the district court on the issue concerning divorce were general; that appellant had been guilty of acts against appellee which constituted extreme cruelty towards her; that the ends of matrimony had been destroyed; that the parties could no longer live together as husband and wife; and that appellee was entitled to a divorce. The judgment awarded her an absolute divorce. The motion of appellant for a new trial was denied.

The ground of divorce alleged and relied upon by appellee is extreme cruelty. An assignment urged by appellant is the insufficiency of the evidence to establish extreme cruelty of appellant towards appellee. The issue of fact presented by the appeal is required to be tried in this court de novo upon the evidence exhibited by the record, and to be thereby determined without reference to the conclusion reached by the district court or the fact that there may be some evidence to support it. § 25-1925, R. R. S. 1943; Mason v. Mason, 157 Neb. 279, 59 N. W. 2d 365.

The allegation that appellant argued with his wife without cause was not supported by proof. The specification that he improperly associated with other women was not established. The effort to compromise appellant by the testimony of two women wholly failed of its purpose. The fact was shown that they confessed to and were convicted of participating in a prearranged and fully executed nighttime highway robbery of appellant on a street in Omaha upon which he was traveling. He was not a transgressor but a victim of an assault and

a highway holdup by despicable characters, one of whom was an ex-convict and who undeniably fled Omaha immediately after the crime. Another had been an inmate of the Girls' Training School. The third participant was the willing recipient of a substantial part of the amount realized from the crime. The charge that appellant stayed away from home at night without appellee knowing where he was is not proven. She said that on many occasions when appellant represented he was going to attend American Legion meetings she would go to but did not enter the building where the meetings were held; that she knew that appellant did not attend the meetings because she did not see the automobile he used parked near the building; and that he would return home on these occasions about midnight or later or earlier. She further said she became suspicious of her husband in 1938 and she had since on occasions followed him. Sometimes she was accompanied by others. She did not claim that she learned anything on these trips of investigation uncomplimentary to appellant or helpful to her. The claim that appellant drank regularly was denied by the testimony of appellee that he did not drink intoxicating liquor regularly or improperly. She said that when they indulged it was to be sociable. The charge of general incompatibility is without significance. Incompatibility of the parties to a marriage which does not amount to extreme cruelty is legally unimportant in this state. It is a matter for premarriage consideration and to be endured if it exists after the marriage vows have been taken. It is included in the ceremonial phrase "for better or for worse."

The evidence of appellee is to the effect that the parties to this case were married December 3, 1934. Soon thereafter they went to Omaha and since 1939 have resided at 5005 Izard Street until appellee left the home of the parties in October of 1951 for a week or two and a second time in January 1952 for about a month and finally on June 20, 1952. The last time she did not

return though she has at all times had her personal belongings at the home. She has occupied a furnished apartment near the Music Box in Omaha where she has been employed since 1941. Appellee testified that the extreme cruelty of appellant she complained of commenced soon after the marriage and consisted of "Just aggravation and continual criticism"; continual complaint of what she cooked and the result of her cooking; the way she dressed, walked, and sat; that she was not a lady; and that she was treated like she was just a maid in the home. If she parked the automobile away from the home and did not lock it her husband would "eat me out all the way home because I was so negligent and irresponsible." He often said that she was a native of Kansas and because thereof she was "ignorant all the time." He applied to her such words as stupid, ignorant, and ugly. When they were shopping for clothing or merchandise of that general character appellant would aggravate and embarrass her by "Dickering about prices and telling me people knew me when they saw me coming; that I was ignorant so they put the price up." She objected that appellant frequently talked about security and saving for old age. She thought his talk about security was "just miserly." "If you wanted to buy something you couldn't buy it because when you got old you might need it. You couldn't live today." They had few meals away from their home and attended very few shows because appellant said they cost too much.

Appellee was first employed at the Music Box in 1941. She claimed she did this because of the request of appellant that she seek and continue work outside of the home. Her initial wage was $12 a week. Her compensation at the time of the trial was $52.50 a week, a yearly bonus of $500, and her expenses when attending bowling conventions and similar meetings. She was permitted to purchase certain merchandise at the wholesale price through her employer. A part of the time since she has been employed she worked on Sunday.

She claimed appellant had Monday off and because of that she did not work on Monday. Each of the parties indulged in bowling 3 nights and sometimes 4 nights a week. She has become and is engaged as a bowling league promoter and she has the highest rating as such. She organized bowling leagues of women. She works 6 days a week and has not lost time by sickness or otherwise except when she was afflicted with measles. The hours of her employment were 9 a. m. to 5 p. m. and she was required to be back at the place of business at 7 p. m. for the evening. She bowls in the daytime and at night, generally 3 nights each week, sometimes 4 nights each week. A part of the time she bowls Sunday afternoons and Sunday nights. She also does payroll work in the office.

The reason she left her husband and home in June of 1952 was "Just inhuman treatment continually." Whenever her husband spoke to her he criticized and nagged. She did not remember that he ever said a kind word to her. She did not leave him to have a good time. Her home was like a jail. Anything she did was wrong. She "was just a maid in a jail." It is not disputed that after appellee left appellant there was this conversation between her and her mother-in-law: " 'Oh, Geraldine, what has happened now? What has he done now?' And she said, 'Oh, nothing,' and I said, 'Why are you doing this?' 'Oh,' she says, 'So many are doing this.' "

This is sufficient to indicate the view appellee had of her marital relationship and the basis of her belief that she was entitled to a divorce. It is significant that no disinterested person unrelated to either of the parties was produced to testify to the existence or happening of any of the matters related by appellee as misconduct by appellant toward her. An older sister of appellee, whose address is Reserve, Kansas, could not tell how often she had seen the parties to this case or been in their home but she estimated it was about once a year;

that these were visits of short duration; and that she, her husband, and children would stop and eat dinner in the home of her sister infrequently but they did not stay overnight. She testified to the conclusion that on occasions in the presence of the witness, her husband, and children appellant criticized appellee for the meal they were having, notwithstanding the witness said the meal was properly prepared. When asked specifically what the language of appellant was she could only remember that he said " 'Is this all you fixed?' " Another sister of appellee said that before she was married, about 13 years prior to the trial of this case, she stayed in the home of appellant and appellee for about a month and since that time she had been in their home and sometimes, but not often, had stayed for a meal; and that she had not heard appellant criticize appellee concerning the way she prepared and served food. She did express the conclusion, without stating any fact or purporting to relate any language of appellant, that he constantly "criticized and belittled her (appellee)." The parties to this case and Mr. and Mrs. Larson had been acquainted for about 7 years and had spent two vacation periods at the same place in Minnesota. Mrs. Larson said that the general attitude of appellant towards appellee was "more or less indifferent." The only attempt to corroborate the testimony of appellee was what her two sisters and Mrs. Larson said as above summarized.

It is true that physical violence is not the only form of extreme cruelty. Likewise the fact that a husband and wife cannot live together, as the trial court found in this case, and that general incompatibility exists, without more, is not extreme cruelty. Extreme cruelty consists of acts or omissions of such a character as to destroy the peace of mind or impair the bodily health of the injured party or be such as to destroy the ends and objects of matrimony. Peterson v. Peterson, 153 Neb. 727, 46 N. W. 2d 126. However the authority of the court relative to divorce is given by statute and the exercise of

power with reference thereto must find its source in the statute or it does not exist. The language in Brown v. Brown, 130 Neb. 487, 265 N. W. 556, is appropriate in the consideration of this case: "It is not for this court to attempt to do what is best for the parties. The relief which should be granted is that provided by the statute upon the establishment of misconduct on the part of the defendant amounting to extreme cruelty. A decree of divorce from the bonds of matrimony should only be granted when the evidence bring (brings) the case within the definition of the statute providing for such relief. While it is apparent that the results of this marriage have at times been most unhappy, that is no sufficient cause named in the statutes for granting a decree of divorce." See, also, Dier v. Dier, 141 Neb. 685, 4 N. W. 2d 731.

Corroboration of the testimony of appellee in support of her appeal to the court for relief was indispensable to her success in this case. The most indulgent view of the record is that there was very slight if any corroboration of the misconduct attributed to appellant by appellee. The testimony offered for this purpose is unsatisfactory, unsubstantial, and unconvincing. It is recognized that it is impossible to formulate a general rule by which to measure the exact amount or degree of corroboration required in a divorce case and hence each case must be determined upon its facts and circumstances. The corroboration relied upon must in itself be competent evidence of the acts and conduct asserted as a ground of divorce. The matters offered in this case as corroboration of the testimony of appellee do not satisfy this test. Peterson v. Peterson, *supra;* Hines v. Hines, 157 Neb. 20, 58 N. W. 2d 505. Reference is made by appellee to the practice in the review of an equity case in this court where the evidence is irreconcilably conflicting that this court will in considering the weight of the evidence give attention to the fact that the trial court saw and heard the witnesses and accepted one

version of the facts over the other. This does not eliminate the necessity for evidence corroborating the facts essential to granting a divorce. Hines v. Hines, *supra*.

The conclusion is that appellee has not sustained the burden imposed on her by the law; that the decree of divorce is not sustained by sufficient evidence; and that it is contrary to law.

The decree rendered in this case on March 18, 1953, should be and it is reversed and the cause is remanded with directions to the district court for Douglas County to dismiss the case and to tax the costs in that court, including the allowance made by it as compensation of the attorneys for appellee, to appellant. The costs of this appeal should be and they are ordered to be taxed to and paid by appellee.

REVERSED AND REMANDED WITH DIRECTIONS.