ESTHER SCHWARCK, APPELLANT AND CROSS-APPELLEE, v. JAMES SCHWARCK, APPELLEE AND CROSS-APPELLANT.
122 N. W. 2d 489

Filed July 12, 1963. No. 35331.

Schrempp, Lathrop & Rosenthal, for appellant.

Merril R. Reller and John McArthur, for appellee.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

YEAGER, J.

In this action Esther Schwarck, plaintiff, filed a petition for divorce from James Schwarck, defendant. In the action the defendant filed an answer and a cross-petition. By the cross-petition the defendant sought a divorce from the plaintiff. The ground for divorce alleged by the plaintiff was cruelty on the part of the defendant. The grounds alleged by the defendant were cruelty and adultery on the part of plaintiff. A trial was had at the conclusion of which a decree of divorce was awarded to plaintiff and she was awarded custody of three minor children of the parties and an allowance for their support, alimony for herself, attorney's fees, and costs. The cross-petition of the defendant was denied. Both parties filed motions for new trial which were overruled.

From the decree the plaintiff appealed on the grounds

that the award of alimony and amount allowed for child support were insufficient. The defendant presented a cross-appeal. By his cross-appeal he urges that the custody of the minor children should have been awarded to him, that no award of alimony should have been made to the plaintiff, and that no allowance for the support of the children should have been made in her favor.

It must be said that the question of whether or not on the evidence either of the parties is entitled to a decree of divorce is the one which requires first consideration.

As has already been made clear the plaintiff seeks to sustain her right to retain her decree of divorce on the ground that the record discloses that the defendant has been guilty of cruelty. By her evidence and the evidence of the defendant there can be little doubt this has been shown, and if by her own acts and conduct she has not forfeited her right, she is entitled to a divorce from the defendant.

Without going into great detail the record discloses with sufficient corroboration that during about 5 years before the trial the defendant on occasion struck the plaintiff and he used abusive language to her which included profanity and repeated accusations of and terms indicating her unchastity.

On the part of the defendant little stress has been placed on the alleged cruelty of plaintiff toward the defendant except in the area of alleged infidelity and adultery. As to this question of adultery it will be said that each alleged incident of which the defendant has adduced evidence is denied by the plaintiff, and also that each incident is without corroboration. It may be said further that if any such incident has been proved, it was condoned by the defendant.

The latest expression of this court on the question of corroboration is in the case of Ross v. Ross, 174 Neb. 795, 119 N. W. 2d 495, as follows: "Corroboration relied upon in a suit for divorce must be competent evidence of the

acts and conduct asserted as a ground for divorce."

On the question of condonation, in the same case, it is said: "Ordinarily, condonation is complete if there is a resumption of marital relations after the alleged breach of marital duty."

Definitive of what is meant by corroboration, this court said in Birth v. Birth, 165 Neb. 11, 84 N. W. 2d 204: "Section 42-335, R. R. S. 1943, means that corroborative evidence other than the declarations, confessions, or admissions of the parties is required of the acts or conduct asserted as grounds for a divorce."

The action here was commenced May 16, 1961. The final separation of the parties took place in April or May of 1961. They were married July 18, 1939. The defendant in his effort to sustain his charges of adultery adduced evidence of alleged incidents of conduct of the plaintiff as far back as 1942 bearing on the question. As to most of these there was no testimony of overt significance on the question of adultery. In most instances there was not anything from which even a suspicion of adultery could flow. Whatever was disclosed by this evidence was well known to the defendant long before the parties separated and if anything was amiss it was condoned.

The defendant gave testimony of an alleged incident when he observed and interrupted an act of adultery. This was several years, probably about 3½ to 4 years, before the trial here. This the plaintiff denied. There was no corroboration and the parties continued to live together thereafter.

The other incident of significance has to do with one Kenneth Sheldon. The plaintiff and Sheldon took an automobile trip together covering a period of 2 to 3 weeks. The defendant effectually insists that on this trip and after their return the two engaged in an adulterous relationship. There can be no doubt that there was opportunity but there is no evidence of overt significance that this was true. There is evidence which

might be said to have been of a corroborative character had there been evidence of or from which a legal inference could reasonably flow that there had been an adulterous act or acts, but there was no such evidence.

It ought to be said here, in order to avoid inferences unjust to the plaintiff, that the plaintiff was not the author of the design to make the trip. The defendant was the author of the design. It is true that she wanted to take a vacation but the plan to have her travel with Sheldon was made by the defendant. He furnished the automobile and the money for that purpose.

The reason given was, stated briefly, that he thought Sheldon was a psychiatrist and that this trip with him would be of value to the mental and emotional state of the plaintiff.

There are many other details in the evidence but none of greater potence than those referred to herein relating to the claim of the right of the defendant to a divorce from the plaintiff on the ground of adultery or of cruelty.

On the record, therefore, the conclusion is reached that the portion of the decree granting a divorce to the plaintiff on the ground of cruelty was proper and should be affirmed.

The record discloses that four children were born of the marriage. Three of them are minors. One is married. By the decree the plaintiff was awarded custody of the three who are minors, subject to the right of defendant to reasonable visitation. The defendant was by the decree required to pay to the plaintiff for support and maintenance of the three $200 a month until they shall become of age or self-supporting, or until the further order of the court, and to pay the living expenses of the son of the parties who was in school in Colorado while he was attending such school. The plaintiff was awarded permanent alimony of $20,000, payable $5,000 in December 1962, and $1,500 each January thereafter until fully paid.

The plaintiff on this appeal contends that this allow-

ance is not sufficient and against this, the defendant contends that the plaintiff, on account of unfitness, should be deprived of the custody of the children, and that they should be awarded to him or to some other suitable person, and that no award of alimony should have been made to the plaintiff.

The defendant has made no showing the effect of which is to show that the plaintiff has created an environmental condition or atmosphere which would reflect adversely on the propriety of committing the care and custody of these children of the parties to her. Without further ado, it will be said that the prayer of the defendant in this respect is denied.

The questions of the amount of child support and alimony for the plaintiff are so interrelated that they will be considered together.

The defendant from about the year 1949 was engaged in what may be generally described as excavating and quarrying. The operations were carried on under the names of James D. Schwarck Excavating Company, Inc., and Schwarck Quarries, Inc. At the start the parties had nothing. The plaintiff and defendant worked together to build up the business and the operations. Everything indicates, as the record discloses without dispute, that the business grew which growth flowed from the joint work of these parties. The growth of the business over the years was substantial. The measure of this growth however is not ascertainable from the record in this case. There is nothing in the record which with any degree of authenticity shows the financial condition of the operations carried on or the total value of the property involved in the operations or the property and estate of the parties to this action. The plaintiff introduced in evidence instruments denominated audit reports, but on their face they carry a declaration of lack of sufficiency as reports of complete and authentic audit. The defendant presented no evidence from which a reasonably accurate conclusion as to values can be reached.

The plaintiff, though having been offered the opportunity to examine the books and records of the defendant, has furnished nothing from which a reasonably conclusive estimate of values could be reached.

In this light the district court was and this court is confronted with only widely varying estimates. In the evidence of the plaintiff there are estimates of net value of all properties as high as $157,345.55. On behalf of the defendant there is an estimate of the assets of the business above liabilities of $70,000 to $80,000. In addition there is evidence of ownership of property which is not a part of the business, which includes a house of about the value of $3,500 to $4,500, a lot of the probable value of $1,000 to $1,500, and another lot the minimum estimate of the value of which was $4,000 and the maximum $10,000. There is nothing in the record on which to base a fair estimate of the profits obtainable from the business, but only that they were quite substantial.

Since the separation of the parties the plaintiff has not occupied a home belonging to the parties but has been required to occupy for herself and the children of the parties rental accommodations. The rental cost is not disclosed as is also true of the cost of maintenance of herself and the children. These costs of course will continue into the future. The standard of living of the parties during the years before the separation has not been disclosed, but there is nothing to indicate that it departed from ordinary and customary concepts.

In the light of this it appears that the award of the decree for child support is insufficient and that it should be increased to $300 a month, otherwise to remain the same.

As to the award of permanent alimony for a wife in the situation such as the plaintiff is in here, this court, in Kramer v. Kramer, 171 Neb. 128, 105 N. W. 2d 741, stated the following, which is a repetition of what had been said theretofore: "In determining the question of alimony or division of property as between the parties

the court, in exercising its sound discretion, will consider the respective ages of the parties to the marriage; their earning ability; the duration of and the conduct of each during the marriage; their station in life, including the social standing, comforts, and luxuries of life which the wife would probably have enjoyed; the circumstances and necessities of each; their health and physical condition; and their financial circumstances as shown by the property they owned at the time of the divorce, its value at that time, its income-producing capacity, if any, whether accumulated or acquired before or after the marriage, the manner in which it was acquired and the contributions each has made thereto, and, from all the relevant facts and circumstances relating thereto, determine the rights of the parties and make an award that is equitable and just."

In the case here everything the parties had at the time of separation, as has already been indicated, was accumulated by the joint efforts of the parties. The plaintiff's contribution was not alone the raising of a family and the care of the home and children, but the record discloses that she actively and diligently participated in the performance of the operations and conduct of the business.

As has been pointed out the record will not permit of anything more than a guess as to the true value of the property which had been accumulated. There is sufficient to indicate the existence of what had been profitable enterprises and that property had been accumulated, as shown by the evidence of the defendant, which was of the net value of from $80,000 to $90,000. This does not include value for a going concern, good will, or anything else in the realm of intangible value.

In Kramer v. Kramer, *supra*, with reference to what has already been quoted therefrom herein, it was said: "We point out that this rule provides no mathematical formula by which an alimony award can be exactly determined. Generally speaking, awards of this court

in cases of this kind vary from one-third to one-half of the value of the property, depending on the facts and circumstances of the particular case."

In the light of this pronouncement and what has been disclosed by the record it must be said that the award of permanent alimony made by the district court is inadequate. That portion of the decree is ordered vacated and set aside with directions to award alimony to the plaintiff in the amount of $35,000, payable as follows: A payment of $5,000 becoming due on the entry of the decree, and a payment of $3,000 becoming due annually thereafter. The other provisions with regard to division and distribution of property and the award of attorney's fees are affirmed. An award of fees for the attorneys for plaintiff for services in this court in the amount of $1,500 is made.

To the extent indicated herein the judgment of the district court is reversed, and to the extent indicated it is affirmed. The cause is remanded to the district court with directions to render decree and judgment in conformity with the conclusions and determinations made herein.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.