MELVON VOLLBRECHT, APPELLEE, V. VIOLA VOLLBRECHT, APPELLANT.

131 N. W. 2d 651

Filed December 11, 1964.   No. 35740.

Bernard A. Ptak, for appellant.

T. L. Grady, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, SPENCER, BOSLAUGH, and BROWER, JJ., and DIERKS, District Judge.

DIERKS, District Judge.

This is a divorce action commenced on April 19, 1963, by the husband, Melvon Vollbrecht, plaintiff-appellee, against the wife, Viola Vollbrecht, defendant-appellant. The ground for divorce alleged by plaintiff was extreme cruelty. Defendant originally cross-petitioned for divorce on ground of physical cruelty and on October 22, 1963, amended such cross-petition to also charge that plaintiff committed adultery with a certain named woman.

The trial court granted an absolute divorce to plaintiff husband and awarded to him custody of the three minor children of the parties and allowed reasonable visitation privileges between defendant wife and said children. The cross-petition of defendant was dismissed. Defendant was awarded alimony of $4,000, payable in annual installments of $500 each, commencing January

1, 1964, without interest, except any delinquent installments were to draw interest as provided by law, and she was also awarded her personal effects. All other property, real and personal, was awarded and assigned to plaintiff, and costs were taxed against plaintiff, including a fee of $400 for services of defendant's attorney and a fee of $20 to one Dennis L. Poeschl, who made an appraisal of the property and testified on behalf of defendant with reference thereto.

Defendant appeals and assigns various errors, all of which will be considered under the following contentions: In awarding the divorce to plaintiff and in not granting the divorce to defendant for the husband's alleged adultery, in not giving custody of the youngest child, JoAnn, to defendant, and for the insufficiency of alimony awarded to defendant.

Plaintiff and defendant were married February 4, 1942. Four children were born to the marriage. They are Roseann, born September 19, 1943; Arnold, born March 18, 1946; Nancy, born August 2, 1950; and JoAnn, born May 1, 1957. Roseann is now married and resides with her husband, Terry Daniel, and is no longer dependent on her parents. The three younger children still resided at home with their father at the time of trial. The defendant has been working full time at the Hilltop Cafe for about 3 months. The record reflects that plaintiff was 44 years old at the time of trial, but it does not reflect defendant's age.

During the entire marriage the plaintiff has farmed and at times has fed a few cattle and hogs that he raised. In the early years of the marriage the defendant helped with the actual field work, when necessary, until the son, Arnold, was old enough to help his father, which he did soon after attaining school age. In 1946 plaintiff bought the farm where they have since lived and reared their children. It comprises 240 acres, situated in Stanton County, Nebraska, with approximately 80 acres of farm ground and balance in pasture. He has for many

years also rented an additional 80 acres of farm ground.

Even the early years of the marriage were not entirely free of family arguments and name calling between the parties, but it was not until the last 10 years before final separation that, according to plaintiff's testimony, it was horrible. Plaintiff testified that defendant accused him constantly of going out with other women, but that he never went near another woman as long as he lived with her. Such accusations would be made in front of the children. In 1959 plaintiff and the boy were farming 400 acres and defendant accused them of running after women instead of working. Defendant would sleep all day and yell all night. The boy and plaintiff had to sleep in the barn to get any rest.

The defendant's stepfather and mother, Mr. & Mrs. George R. Hall, lived in Norfolk, Nebraska, and plaintiff testified that defendant would leave home and stay a couple of days. She usually went to her folks and then plaintiff would go get her. A lot of times she would get mad on the farm and leave the house at night and plaintiff would go out and hunt for her practically all night. The youngest daughter, JoAnn, stayed with her grandmother, Mrs. Hall, after she was about 4 months old until the spring of 1958, but after that plaintiff and Roseann took care of her. The defendant's screaming would make the child cling to him like he was her last hope. The mother resented her and every 2 or 3 weeks she would lock the child out, tell her to go out with her dad, and then plaintiff would take her with him on the tractor to the field. She was scared to death of her mother.

Defendant started to work at the Lazy L Restaurant in Norfolk in August 1961. For the first 4 months she stayed with her folks in Norfolk, but after that she stayed at home and drove plaintiff's car back and forth to work. Out of her wages she bought Roseann's wedding dress, a suit for Arnold, and a rug for the house that cost about $30. She left the family home permanently

in early September 1962. Before leaving she accused plaintiff of putting his arm around another woman 20 years ago, plaintiff called her a liar, and she got mad. She was still mad when Roseann came over the next day to can tomatoes. Plaintiff was on the porch fixing Nancy's bicycle tire when Roseann and Terry came. Defendant came out of the house yelling, threw a ketchup bottle and plate at plaintiff, and broke the plate. He and Terry went up in the yard and defendant came up there with the broken half of the plate and was going to slice him with it, but he took it away from her. She grabbed the pitchfork and took after him and he ran. On September 8, 1962, defendant left with her folks and stayed away until after Easter 1963. The family did not know where she was. Plaintiff tried to locate her by checking different employment offices in Nebraska. Her folks said they did not know where she was and even went to Columbus with plaintiff to try to find her.

The three oldest children corroborated the plaintiff's testimony with reference to specific instances occurring in their presence of arguments between the parents leading to attempted violence by the mother on the father. The oldest daughter, Roseann Daniel, verified the incident that occurred the day she went over to can tomatoes when the father was fixing the innertube on the porch and the mother came flying out of the house, threw the ketchup bottle and Melmac plate with such force that the plate broke, and that he ran when she threw the pitchfork. Roseann further testified that her mother had the idea her father was stepping out on her and that he was having affairs with other women and meeting them in the cornfield or on the road or in town. It would start an argument and she would attack him with some object, anything near, lamps, skillets, baseball bats, and he would try to wrestle the object away from her and then it would be a fight. He never hit her the first blow but he had defended himself. The mother's loud talking

and yelling at the father really began about the time she found out she was pregnant with Joanie (JoAnn). Roseann further testified: "I've seen her try to stab him with butcher knives and one time try to ax him with an axe and there would be a fight when he tried to take it away from her."

The daughter Nancy testified on rebuttal that she heard her mother accuse her father about every other night of going out with other women, and that when she threw things at him he would only fight back in self-defense. The son Arnold testified on rebuttal to verify an incident when he and his dad were watching T-V and defendant came in yelling and hollering, grabbed a heavy wooden lamp, and tried to hit plaintiff with it. Terry Daniel testified on rebuttal to verify the incident of defendant throwing the pitchfork at plaintiff.

Defendant acknowledged on direct examination that she accused her husband of running with other women. Such accusations of infidelity were completely unfounded during all the years these parties lived together as husband and wife. The evidence shows there were many physical encounters and violent arguments, which each party blamed the other for starting. She admitted throwing the plate and picking up the pitchfork, but generally denied throwing other things at plaintiff or trying to hit him with objects. This opinion need not be extended with further details regarding the physical encounters of the parties. Defendant finally admitted after much evasiveness that during the period of over 7 months from the time she left the farm until April 1963, she did not communicate with her family or make any inquiry whatsoever as to the health, education, or welfare of the children.

Defendant's contention of plaintiff's adultery is based upon activities and conduct of defendant occurring long after her own disappearance and within the last few months before the trial herein, consisting largely of plaintiff being seen occasionally at public dances in the

company of another woman (a divorcee), at whose home plaintiff's car was frequently seen and he was observed entering or leaving at times by defendant's parents, for all of which plaintiff gave a reasonable explanation; and that they, together with the woman's children and his own daughter Nancy, then 13 years old, had taken a few days trip to Colorado in July 1963, plaintiff to visit his sister and she and her children on vacation.

With reference to defendant's contention of plaintiff's adultery there is no unexplained evidence or circumstance of any real significance that would lead to any overt act of an adulterous relationship between plaintiff and any other woman while this marriage subsisted. There is no merit to such contention of defendant and the trial court properly dismissed her cross-petition.

Extreme cruelty, whether practiced by using personal violence, or by other means, is a statutory ground for divorce. § 42-302, R. R. S. 1943. Whether accusations of infidelity made by one spouse against the other constitute extreme cruelty within the meaning of the statute must be determined by the facts of each particular case. In no case will they be given that effect unless they are shown to be either unfounded or malicious. Meredith v. Meredith, 148 Neb. 845, 29 N. W. 2d 643.

Where the evidence in a divorce suit sustains a finding of cruelty on the part of one spouse toward the other, and is corroborated as required by law, the action of the district court in granting a divorce to the aggrieved spouse is proper and ordinarily will not be interfered with by this court on appeal. In effect such was the holding of this court in Kramer v. Kramer, 171 Neb. 128, 105 N. W. 2d 741, wherein the wife was the aggrieved spouse to whom the divorce was granted. There is no sound reason why the same rule should not apply where the husband is the aggrieved spouse in such a case as is here involved and the divorce is granted to him.

When the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining

the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite. Lichtenberg v. Lichtenberg, 154 Neb. 278, 47 N. W. 2d 575; Meredith v. Meredith, *supra*.

The trial of this case extended over one full day and a portion of another day and the trial court did observe the witnesses, their demeanor and conduct, both on and off the witness stand, and, in fact, was obliged at different times to admonish each of the principal parties as to their conduct and decorum during the trial. From our examination of the record herein the judgment of the trial court in awarding the plaintiff an absolute divorce and in dismissing defendant's cross-petition is amply supported by sufficient competent evidence, duly corroborated, and is not contrary to law, and it should be affirmed in that regard.

In a divorce suit in which the custody of minor children is involved, the rule is that the custody of the child is to be determined by the best interests of the child, with due regard for the superior rights of fit, proper, and suitable parents. The evidence shows the close attachment of the youngest child, JoAnn, for the father and the care and attention he devoted to her from the time she was 2 years old. The undisputed evidence shows that the mother left the farm home and her whereabouts were unknown to the family for over 7 months prior to the commencement of this action, during which period she clearly demonstrated her utter disregard for the health and welfare of her minor children and cannot now rightly claim any superior right over the father to the custody of JoAnn. There was no error in awarding the custody of said child to the father and the trial court's judgment should also be affirmed in that respect.

There remains for consideration the adequacy of the alimony awarded to defendant. This court has repeat-

edly held that in determining the question of alimony or division of property as between the parties the court, in exercising its sound discretion, will consider the respective ages of the parties to the marriage; their earning ability; the duration of the marriage and the conduct of each during the marriage; their station in life, including the social standing, comforts, and luxuries of life which the wife probably would have enjoyed; the circumstances and necessities of each; their health and physical condition; and their financial circumstances as shown by the property they owned at the time of the divorce, its value at that time, its income-producing capacity, if any, whether accumulated or acquired before or after the marriage, the manner in which it was acquired and the contributions each has made thereto, and, from all the relevant facts and circumstances relating thereto, determine the rights of the parties and make an award that is equitable and just. Schwarck v. Schwarck, 175 Neb. 560, 122 N. W. 2d 489; Kramer v. Kramer, *supra*. The briefs of both parties cite only these two cases on the question of an alimony award. In both of these cases it was pointed out that the foregoing rule provides no mathematical formula by which an alimony award can be exactly determined, but generally speaking, awards of this court in cases of this kind vary from one-third to one-half of the value of the property, depending on the facts and circumstances of the particular case.

There is no dispute as to what the property comprises. Plaintiff testified as to the purchase of the farm, comprising 240 acres, in 1946 for $9,800, but could not state a current market value thereon. He testified there were about 80 acres of farm ground and the balance was in pasture; that his farming equipment consisted of two tractors, a cornpicker, combine, plow, harrow, rotary hoe and grinder, and some wagons; that his livestock consisted of 17 stock cows, 6 milk cows, 15 spring calves, and about 50 pigs, that weighed about 60 pounds each;

that he had a 1961 Ford car, 1,000 bushels of corn and 10 tons of hay on hand, and a couple hundred dollars in the bank; that he was feeding the calves and pigs and would have to buy another $800 to $1,000 worth of feed to finish them for market; and that he owed $1,200 on the farm mortgage, $720 on the car mortgage, $1,000 on a bank note, $300 on a feed account, $100 on his oil account, and $150 personal taxes. The foregoing items of indebtedness, including an estimated $1,000 for additional feed, total $4,470. Plaintiff did not purport to state a current market value for any of the foregoing items of personal property.

Dennis L. Poeschl of Stanton, Nebraska, made an appraisal of the property and testified on behalf of defendant that he was a licensed real estate agent, clerked many farm sales and public auctions in the community, and had an adjoining farm listed for sale; that he was generally familiar with the land in that area; that the Vollbrecht farm was of poor quality, sandy, and pretty well cut by ditches, ravines, and a creek through the middle; that the buildings consisted of a house, barn, double crib, and garage, all in poor condition; and that from clerking farm sales he was well acquainted with the values of livestock and farm machinery in and about Stanton County. Mr. Poeschl valued the farm at $80 per acre, or $19,200, and stated that the Wilkins appraisal for the county taxing authorities, in 1955 or 1956, was near $16,000 and was pretty close to actual value at that time; he valued one tractor at $1,700, the other tractor at $700, a four-row John Deere corn planter (picker) at $225, the combine at $225, a wagon and gear at $185, the Ford car at $1,575, the 17 stock cows at $165 per head, or $2,805, one holstein milk cow at $185 and the other milk cows at $150 each, which for the remaining 5 would be $750; and he saw only one calf and a few pigs and did not attempt to value them or the feed on hand. The foregoing values together with the $200 in the bank account total $27,750, without taking into ac-

count the other items of farm machinery, livestock, and feed on hand as enumerated by plaintiff. Deducting the indebtedness listed by plaintiff leaves a net value of such assets in the sum of $23,280. At the time of the marriage the plaintiff had been farming some rented land for 2 years, and he had some horses, hogs, cattle, and machinery. Nothing is shown in the evidence as to the number of head of livestock and amount of machinery or values thereof. The defendant had no property other than wedding gifts at that time.

The alimony award of the trial court in the amount of $4,000 appears to be inadequate under all the circumstances and should be increased. The defendant contends that the wages, amounting to $1,500, earned by her while working at the restaurant in Norfolk during the last year before the final separation, should be restored to her because she paid for Roseann's wedding dress, bought a suit for Arnold, a rug, some end tables and what-nots for the house, and otherwise contributed to general household expenses. There would be no more reason to reimburse defendant for said contribution of her earnings as such, than to reimburse plaintiff for the value of his farm labor during a like period. Contributions of each party to the acquisition of property accumulated is simply one of many factors taken into account, but not considered separately, in the application of the rule hereinbefore stated in making an alimony award that is just and equitable. Considering all the facts and circumstances in this particular case we conclude that the alimony award to defendant should be increased to the sum of $7,500, payable in annual installments of $500 each, as determined by the trial court, commencing on January 1, 1964, without interest, except any delinquent installments shall bear interest as provided by law. The installment due January 1, 1964, shall draw interest at 6 per cent per annum from said date until paid. As so modified by the increase of alimony awarded to defendant, the judgment and decree of the trial court is in all

respects affirmed. Costs on this appeal are taxed to plaintiff, including a fee of $350 for the services of defendant's attorney in this court.

AFFIRMED AS MODIFIED.

Opinion in this case adopted by the Supreme Court prior to the death of District Judge JOHN M. DIERKS.