SHIRLEY RUTH READ, APPELLANT AND CROSS-APPELLEE, V.
EDWARD OSCAR READ, APPELLEE AND CROSS-APPELLANT.
139 N. W. 2d 829

Filed January 28, 1966. No. 36045.

Edward E. Hannon, for appellant.

William W. Griffin, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

SPENCER, J.

This is a divorce action commenced May 26, 1964, by appellant, Shirley Ruth Read, against appellee and cross-appellant, Edward Oscar Read, who will hereinafter be referred to as appellee. The trial court granted appellant a divorce and awarded her $1,500 cash and a 1959 Chevrolet as permanent alimony, and a $300 allowance for attorney's fees. Appellant perfected an appeal and appellee a cross-appeal to this court.

Appellant assigns as error the insufficiency of the alimony, and appellee assigns the insufficiency of the evidence to justify a divorce. Appellant's evidence, in addition to interrogatories submitted to appellee covering

his property and the testimony of a valuation witness, consisted of her own testimony and that of her mother and father. Appellee did not take the witness stand or produce any witnesses of his own, but rested at the conclusion of appellant's case.

Appellant's chief complaints consisted of her husband's excessive drinking, staying away overnight without explanation of any nature, talking about appellant in public, calling her names, harassing and humiliating her, and asking her to pack her clothes and get out.

Divorce cases are tried de novo on appeal in this court. Overton v. Overton, 178 Neb. 267, 133 N. W. 2d 7. While the corroboration herein is very weak, we determine that it is sufficient to justify the action of the trial court in granting a divorce. A general rule by which to measure the exact amount or degree of corroboration required in a divorce action cannot be formulated, and each case must be determined on its own facts and circumstances. See Schwarting v. Schwarting, 158 Neb. 99, 62 N. W. 2d 315.

Appellant's testimony indicates a course of continual harassment and humiliation, much of which from its nature could not be corroborated. There is, however, sufficient corroboration to determine that a divorce is in order herein. Appellee on one occasion was heard to tell his own mother, when he was away until the early hours of the morning and his wife was frantically trying to locate him, that he was in no hurry, he had nothing to go home for. Appellee admitted to appellant's mother that he stayed out all night and said he did not know why he did it. Appellee was observed in an intoxicated condition on occasions, and on one of them, when appellant's father told him if he would quit his drinking he and his wife could get along, he said he knew it. Shortly before the divorce appellee told appellant's mother that he and her daughter were not going to live together much longer, which is some corroboration of appellant's testimony that appellee told her to pack her things and

leave. That same night, about 1:45 a. m., appellant's mother and brother were called to the home of the parties and there discussed their marital difficulties until 8 a. m. On the question of a possibility of a reconciliation, appellee said he wanted to know what his wife was going to do, as he would not change. Appellee removed his wife's signature from their joint bank account, and checks written by her shortly before the separation were returned. The only corroboration of physical abuse was the testimony of appellant's father that he observed appellee strike her and bounce her up against the automobile.

The parties were married just a little over 2 years. At the time of the marriage, appellant had approximately $500 in cash or in a checking account; 19 head of cattle; and household furniture and furnishings. She moved her furniture and furnishings to appellee's home, and used the money she had on hand in the marriage. She moved her cattle onto the ranch, but in May of 1963, at appellee's insistence, she moved them off. However, all money received from the sale of her own calves went into her own bank account. This amounted to $1,012.66. Appellant contributed at least $1,150 of her own cash funds, and also household goods and furniture, on which she put a valuation in excess of $1,700, to the marriage. This furniture and the household goods remained with appellee under the terms of the court's divorce decree.

Appellee had three children from a previous marriage, who were 13, 15, and 16 years of age at the time of the divorce. He owned a ranch valued at $68,000, which at the time of the divorce was subject to a mortgage of $33,242.58. At the time of the marriage he also owned 69 cows, 2 bulls, 76 heifers and steers, and 60 calves. At the time of the divorce this had increased to 95 cows, 3 bulls, 35 yearlings, 76 calves, 10 sows, and 1 boar. He also owned three tractors, other farm machinery, two cars, and a truck. At the time of the divorce, in addition to the mortgage on the ranch, he owed obligations of

approximately $7,600, of which $4,000 was to his father.

In Vollbrecht v. Vollbrecht, 178 Neb. 31, 131 N. W. 2d 651, we said: "In determining the question of alimony or division of property as between the parties the court, in exercising its sound discretion, will consider the respective ages of the parties to the marriage; their earning ability; the duration of the marriage and the conduct of each during the marriage; their station in life, including the social standing, comforts, and luxuries of life which the wife would probably have enjoyed; the circumstances and necessities of each; their health and physical condition; and their financial circumstances as shown by the property they owned at the time of the divorce, its value at that time, its income-producing capacity, if any, whether accumulated or acquired before or after the marriage, the manner in which it was acquired and the contributions each has made thereto, and, from all the relevant facts and circumstances relating thereto, determine the rights of the parties and make an award that is equitable and just."

At the time of the divorce the appellant was 34, the appellee 39. The marriage lasted only 2 years and 1 month. There is no evidence that appellant's health is impaired; there has been little change in appellee's property; and appellee does have three minor children dependent upon him for their support and education. The marriage has been more or less a stormy one. An action for divorce was filed in 1963, and the parties were separated but were reconciled on appellee's promise to spend more time at home and to be more moderate in his drinking.

Under the facts of this case, the allowances herein are not too far out of line. We do believe, however, that the appellant should receive basically her contributions to the marriage, which we determine to be slightly in excess of the trial court's figures, and an increase in the cash allowance of $1,000 would be more equitable to the appellant.

For the reasons given, we affirm the judgment of the trial court granting a divorce to the appellant and setting off the 1959 Chevrolet automobile, but we modify the award of alimony by allowing appellant $2,500. We further allow the appellant an additional $300 for services of her attorney in this court and the costs of the action.

AFFIRMED AS MODIFIED.