MARY KULA, APPELLANT AND CROSS-APPELLEE, V. TOM KULA, APPELLEE AND CROSS-APPELLANT, JOE KULA ET AL., INTERVENERS-APPELLEES AND CROSS-APPELLANTS.

149 N. W. 2d 430

Filed March 24, 1967.   No. 36469.

Kelley, Grant & Costello, for appellant.

532

Lathrop & Albracht for appellee and interveners-appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

This is an action by Mary Kula wherein she seeks a decree of divorce from her husband, Tom Kula, on the ground of cruelty. The answer of the defendant is a general denial. A petition in intervention was filed in the case by Joe Kula and E. James Kula, in which they allege they are the owners or part owners of the real estate to which Tom Kula holds the legal title and pray that the rights of each be established in this action, particularly as against the claims of Mary Kula to a property settlement with her husband, Tom Kula, in the divorce action. The trial court granted plaintiff a divorce, denied the claims of the interveners, and fixed the terms of the property settlement. Plaintiff appealed and the defendant and interveners have cross-appealed.

Plaintiff's assignments of error are: The trial court erred in awarding plaintiff an insufficient amount from the property owned by plaintiff and defendant, in failing to award the home place to the plaintiff, and in directing plaintiff to pay one-half of all income tax liability incurred by plaintiff and defendant for 1964 and prior years. Cross-appellants assign as error the awarding of an excessive amount of alimony to the plaintiff. The right of Joe and E. James to intervene under the circumstances is supported in Harris v. Harris, 151 Neb. 191, 36 N. W. 2d 849, and 27A C. J. S., Divorce, § 91, p. 318.

As a matter of expediency, we shall refer to the plaintiff as Mary, the defendant as Tom, and the interveners as Joe and James. Joe is a brother of Tom and James is the adult son of Tom and Mary. Tom and Mary were married at Alliance, Nebraska, on February 23, 1930. Mary was 17 years of age at the time and Tom

was 28, although there is some dispute in the evidence as to the ages of these parties.

The granting of the divorce is not assigned as error. The assignments of error relate to the correctness of the division of property awarded by the trial court. The value of the property involved was stipulated in the pretrial order as follows: The farm in Nance County containing 240 acres, referred to in the record as the Prairie Creek farm, $30,000; the farm in Nance County containing 80 acres, referred to in the record as the home place, $40,000; the farm in Merrick County containing 160 acres, referred to in the record as the Merrick County farm, $28,000; the apartment house in Columbus, Nebraska, $16,000; cattle, $12,000; farm machinery, $4,000; 1965 Ford automobile, $2,500; and household goods, $2,000. The total stipulated value of the property is $134,500. The plaintiff was awarded the apartment house of the agreed value of $16,000, household goods of the value of $2,000, a 1963 Ford automobile valued at $1,300, plaintiff's personal jewelry of the value of $400, and the sum of $35,000 in cash, exclusive of 5 shares of IBM stock, value not shown, and stock of K. N. Paul Company purchased for $1,000, $500 of which was paid for from $2,350 inherited from an aunt. The award of property was of the approximate value of $54,700.

The evidence shows that after the marriage, Tom continued to farm a ranch in Box Butte County with his brothers, Joe and Charley. All had some interest in the ranch. They lost this ranch about 1934. Charley was paid his interest in the remaining property of the partnership and he no longer appears as a participant in subsequent transactions. Tom and Joe rented some ranch land which was operated by Tom, Mary, and Joe as a partnership of some kind. In 1939, the home place in Nance County was acquired and the title taken in the name of Tom. In 1941, Tom and Mary moved to the home place in Nance County. Joe remained on the Box Butte County ranch. In 1945, Tom contracted for

the purchase of the Prairie Creek farm to which Tom eventually took the title, and, later still, conveyed it to Mary and himself in joint tenancy. In 1946, Tom bought the Merrick County farm at public auction and title was eventually taken in his name although other members of the family had interests in it, or, at least, contributed to the purchase price. In 1946, Tom and Joe purchased an apartment house in Columbus, Nebraska, at an estate sale, in which the other brothers and sisters of Tom and Joe had equal interests. The title was taken in the name of Tom and Joe. It was later conveyed to Tom by Joe. As to the personal property, Joe admits that Tom was in partnership with him in the cattle and machinery on the Box Butte County ranch at the time Tom and Mary left in 1941, but asserts that extensive wheat growing was his personal operation. It cannot be questioned that Joe sent Tom large sums of money which may have been contributions to operational partnerships, partnership in lands purchased, loans, gifts, or trust funds used by Tom for Joe's benefit. The evidence is rather conclusive that Tom and Joe were partners for many years under the name of Kula Brothers. Their relationship was close and their records ill-kept. After changes were made in the original Kula Brothers partnership, particularly after James allegedly became a member, its financial operations, to the extent shown by this record, were so fragmentary that the nature of the interest of each in the partnership is not determinable. The interests of the parties to the lands was in a like condition other than the interests shown by recorded instruments. Although jurisdiction existed in this action to determine the respective interests of the parties, the evidence was insufficient to change the effect of the recorded deeds, particularly to establish liens or resulting trusts.

James was the only child of Tom and Mary and was 35 years of age at the time of trial. He was a graduate of a law college and had engaged in the practice

of law for a year and a half before he returned to farming. His testimony is that he had been assured by Tom, Mary, and Joe that if he would return and assist them with their farming operations, he would inherit all of their property. According to his testimony, he became a partner in 1957, drew checks on partnership funds, made deposits to the same funds, purchased a farm of his own, and made advancements to the partnership, or to the individual members, in very large amounts. His testimony is that he has advanced more than $24,800 to the partnership which he refers to as advancements and for which he seeks a lien. The source of these advancements is very questionable. He testifies that he purchased his own farm in Nance County in 1957. He says all the production from his farm, including crops, cash rent, and government payments were used on the home place from 1957 to 1964. He says he kept track of these contributions and that they were in excess of $24,800. During this period of time, the partnership filed partnership income tax returns. These returns show James' income for the whole period to have been $6,883.10. He claims his gross income for the period to have been $82,747. James explains this by saying, in effect, that the partnership income tax returns were not made to show the actual earnings or profits of the individual partners, but were made to distribute them arbitrarily to reduce the income tax to a minimum. As an example, he says that after Joe applied for and received social security, he was no longer shown as a partner or that he received a share of the earnings and profits although he still had his interest and received his share. This was done, he says, to protect his qualifications to receive social security. This evidence is so incredible by one admitted to the practice of law that we can give it little weight. The fact is that these advancements, if made, were thought to be for his own benefit for the reason that he anticipated their return to him by inheritance upon the deaths of Tom, Mary,

and Joe. We necessarily conclude that these advancements, even if made, were not made to acquire an interest in the fee title to the property and that no basis exists for declaring them to be a lien on the property of Tom and Mary, or of Joe if Joe had been able to establish an interest therein. We are necessarily led to the conclusion that the real intent of the evidence of James was to reduce the property interests of Tom for the purpose of reducing the division of property to Mary in this divorce action.

On November 16, 1964, Tom, Joe, and James entered into an unsworn instrument designated as "Affidavit and Agreement for Accounting." This purported agreement was entered into in November 1964 preceding the divorce action on March 3, 1965. It purports to review the previous transactions between the members of the partnership, including changes in its members, usually for the purpose of minimizing the amount of income tax to be paid without regard for the facts and of protecting social security benefits for Joe and Mary. The facts therein recited are generally not supported by anything other than the mere recitation in the agreement, other than checks and bank records in evidence which tend to confuse the true effect of their transactions. The agreement apparently was intended for use in future legal actions, the only one in the offing being this divorce action, as is evidenced by the last paragraph authorizing the attorney who drafted the instrument to testify in their behalf as to any materials, records, conversations, or in any other matter relevant to the same in any court or legal proceeding. The purported agreement, not participated in by Mary, is nothing more than a self-serving statement insofar as Mary is concerned, and has little weight except as to the admissions against interest therein contained.

It is fundamental that the burden of proving a resulting trust is upon the person asserting it and he must do so upon evidence that is clear, convincing, and satis-

factory. Where the alleged trust relationship is just as consistent with that of a gift or loan, courts will not ordinarily impress a resulting trust. These principles are sustained by our holdings in Meisinger v. Johnson, 162 Neb. 360, 76 N. W. 2d 267, and Olsen v. Best, 167 Neb. 198, 92 N. W. 2d 531.

We think the evidence sustains a finding that the value of the property of Tom and Mary is $134,500 as stipulated by the parties. From this amount, the indebtedness of Tom, consisting of notes and unpaid taxes in the amount of $9,140 should be deducted. The indebtedness of Tom is $6,000 and unpaid taxes are approximately $3,140, making the amount of indebtedness to be deducted. The net value of the estate is therefore $125,-360. The award to Mary by the decree is $54,700, less taxes on the apartment house in Columbus and one-half of any income tax liability that may be assessed against Tom. We think this is a fair division of the property accumulated by the parties over the years under the rules declared by the following cases: Loukota v. Loukota, 177 Neb. 355, 128 N. W. 2d 809; Read v. Read, 179 Neb. 637, 139 N. W. 2d 829.

Ordinarily, under the circumstances shown by this record, the wife is entitled to approximately one-half of the accumulated property of the parties. Both are charged with one-half of any income tax liability, which has been tentatively assessed at $7,976.21. Considering the possible interest of Joe to some of the property in the name of Tom, the trial court could properly give consideration to this contingency. We find the division of property to be fair and reasonable, and the award of the trial court on this phase of the case is approved.

Complaint is made of the trial court's order requiring Mary to pay one-half of any income tax liability that may be assessed against Tom. In a sense, such a potential liability is against the property being divided. The amount affects the net value of Tom's estate and, the amount not being determinable at the time of trial,

we can see no reason why Mary should not be charged with her share of this tax liability. We think the trial court was in error in charging her with one-half of this tax liability rather than her proportionate share. To this extent the decree of the trial court is modified.

It is contended by Mary that the trial court erred in not assigning the home place to her as a part of her award. The evidence shows that the home place, the Prairie Creek farm, and the Merrick County farm are operated successfully as a single unit. The home place is particularly adapted to the feeding of cattle, the Prairie Creek farm to the production of grain and hay, and the Merrick County farm is adapted mostly for pasture. Where it can be avoided, it is the duty of the court to divide the property in such a manner as to permit the husband to retain the means to pay off any judgment awarded to the wife. The wife's contention here seems to be an emotional one while that of Tom appears to be one of necessity. The trial court properly refused to award the home place to Mary under the circumstances here shown.

We affirm the decree of the district court except as to the modification herein stated. The costs of the appeal are taxed to the plaintiff.

AFFIRMED AS MODIFIED.