IOLA M. MARTIN, APPELLEE, v. GRANT L. MARTIN, APPELLANT.

197 N. W. 2d 388

Filed May 5, 1972. No. 38203.

William L. Walker and Earl Ludlam, for appellant.

Beynon, Hecht & Fahrnbruch, for appellee.

Heard before WHITE, C. J., BOSLAUGH, McCOWN, and CLINTON, JJ., and WARREN, District Judge.

WARREN, District Judge.

This is a divorce action wherein plaintiff Iola M. Martin was granted an absolute divorce on May 3, 1971, from the defendant Grant L. Martin on grounds of extreme cruelty. Defendant concedes that plaintiff is entitled to a divorce and that plaintiff should be awarded one-half of the property of the parties, but attacks the trial

court's division of property and alimony provisions on various grounds.

Plaintiff was 60 years of age at the time of trial, and defendant was 63. They were married in 1935 and their three children were grown and emancipated. They have been in various businesses in and near Lincoln since their marriage, and for the past 5 years have owned and operated a valuable dairy and stock farm a short distance west of Lincoln, consisting of approximately 400 acres. The evidence demonstrated without question that the defendant was a man of violent and surly disposition, an absolute dictator to his wife and children, and a man who was guilty of extreme cruelty, both physical and mental, in every sense of that legal terminology. The plaintiff had admittedly made substantial and continuing contributions to the accumulation of property, both as a farm wife and otherwise. The trial court awarded each party an undivided one-half interest in the farm real estate, subject to defendant's sole use and entitlement to the income therefrom from December 1, 1969, to March 1, 1972, conditioned upon payment of $900 to plaintiff, the payment of real estate taxes for 1970 and 1971, the maintenance of improvements in good condition, and payment of all expenses of operation, maintenance, and improvement of the farm real estate after December 1, 1969. Plaintiff was awarded as her separate property an automobile valued at $1,190 and $3,600 in bank money orders. Defendant was awarded farm machinery, livestock, and miscellaneous farm personal property valued by the court at $63,755. The parties had each purchased a $15,000 certificate of deposit in 1968 from the proceeds of a land sale, and each had expended a portion thereof in payment for permanent improvements to the 400-acre farm. After such expenditures, plaintiff was awarded the $10,253.88 balance of her certificate of deposit, and defendant was awarded the truck and farm machinery he purchased with the $7,457.30 balance of his certif-

icate of deposit funds. Each was allotted a portion of the household goods. Defendant was ordered to pay plaintiff as alimony the sum of $20,000 in three installments, without interest, ending September 1, 1972, together with further alimony of $3,900 payable to plaintiff at $65 per month for 60 months commencing March 1, 1972, with credit to be allowed thereon for any Social Security payments received by plaintiff during that period. Defendant was required to pay all indebtedness incurred before December 1, 1969. Costs were taxed to defendant including an attorney's fee of $4,300 for plaintiff's attorney. The court specifically considered the fact that no temporary support had been paid plaintiff during the 13½ months of litigation.

Until the time of filing his motion for new trial, the defendant acted as his own counsel, despite the repeated suggestions of the trial judge and plaintiff's attorney that he employ counsel. Defendant's stubborn insistance that he act pro se resulted in a trial of 5½ full days duration, a complex record of monumental proportions, a series of debates by defendant with witnesses, and a disruption of the entire trial process. The record demonstrates that the trial judge, exhibiting patience far beyond the call of duty, acted throughout the trial with complete fairness to the defendant, a fact which the defendant acknowledged many times during the trial.

Defendant's first contention is that the court erred in not upholding a written agreement, termed the "Wilson Agreement," entered into by the parties on December 1, 1969. Plaintiff testified that defendant had the property settlement agreement prepared on his own, that she was afraid that if she didn't sign it she would forfeit everything, and that she was fearful of physical harm if she did not sign it. The so-called Wilson Agreement provided, among other things, that defendant should have the use of the 400-acre farm, and home thereon, and all farm machinery, for 5 years, upon payment to

plaintiff of $600 a year rent. The trial court·held that plaintiff's execution of the Wilson 'Agreement was ·co-'erced by the defendant, was not entered into freely and voluntarily by plaintiff,. was unfair and inequitable in its provisions, and was therefore null and void.

This court has stated: "It is the duty of ·the court to scrutinize settlement agreements closely in divorce actions and to protect against fraud, intimidation, and ignorance and guard against unconscionable results. The court is required to render a fair and equitable result under all the circumstances." · Diers v. Diers, 185 Neb. 552, 177 N. W. 2d 503. We have concluded · that the trial court properly held the Wilson Agreement ·to be a nullity.

During the second day of trial, the defendant, acting pro se, orally stipulated with plaintiff in open court that the court should determine the property of the parties and its value as it existed on December 1, 1969; The stipulation was the result of defendant's repeated refusal to testify regarding the cattle or other personal property he owned at the time of trial, or about his dealings after December 1, 1969. In that connection, defendant testified as follows: "What I bought after-wards is none of your business; and what I traded is none of your business; none of her business."

The court, after carefully informing the defendant as to the effect of such a stipulation, accepted the same, and the evidence thereafter was directed to the date of December 1, 1969, to the exclusion of testimony as to the property situation at the time of trial. The defend-ant now contends that the court erred in determining and valuing the property as of December 1, 1969, rather than at the time of trial as is the general rule.

The defendant was acting as his own counsel, as he had every right to do; but when a party does so, his rights are subject to and will·receive the same consid-eration as if he had been represented by an attorney. Vielehr v. Malone, 158 Neb. 436, 63 N. W. 2d 497. Stip-

ulations voluntarily entered into between the parties to a cause or their attorneys, for the government of their conduct and the control of their rights during the trial or progress of the cause, will be respected and enforced by the courts, where such stipulations are not contrary to good morals or sound public policy. Courts will enforce valid stipulations unless some good cause is shown for declining to do so, especially where the stipulations have been acted upon so that the parties could not be placed in status quo. Kuhlmann v. Platte Valley Irr. Dist., 166 Neb. 493, 89 N. W. 2d 768.

Parties are bound by stipulations voluntarily made and relief from such stipulations after judgment is warranted only under exceptional circumstances. Ehlers v. Vinal, 382 F. 2d 58; Farmers Co-op. Elevator Assn. Non-Stock, Big Springs, Nebraska v. Strand, 382 F. 2d 224. Defendant did not ask to be relieved of the stipulation during trial, and he is not now in a position to secure such relief, particularly where the stipulation was acted upon by the parties in the trial court in restricting proof offered to property and values only as of December 1, 1969. Defendant's second contention has no merit.

Defendant's remaining contentions are directed to the trial court's division of property and award of alimony. The evidence as to the extent of personal property owned on December 1, 1969, and the valuation thereof is sharply conflicting. "Actions in equity on appeal to this court are triable de novo, subject, however, to the rule that when credible evidence on material questions of fact is in irreconcilable conflict this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite." Keenan v. Keenan, 187 Neb. 686, 193 N. W. 2d 568.

Under the circumstances shown by this record, plaintiff was entitled to one-half of the accumulated prop-

erty of the parties. The defendant never contended otherwise. A careful review of the trial court's extensive and detailed findings of fact convinces us that the division of property and provisions for payment of alimony are fair and reasonable, and that the award of the trial court should be approved.

The defendant complains that he should have been awarded the entire title to the real estate, with an award of money alimony to plaintiff for her one-half interest in the farm. This court has where possible favored a division of property in such manner as to permit a husband to retain the means to pay off any judgment awarded to the wife. Kula v. Kula, 181 Neb. 531, 149 N. W. 2d 430. However, there are special circumstances disclosed by the record in this case. Testimony as to valuation of the farm varied from $70,000 to $98,600. The defendant had decided that he could not continue to operate the farm alone due to his advancing age and declining health. He had been actively attempting to sell the farm since December of 1969; he was advertising it for rent. Furthermore, the court provided for defendant's exclusive use of the farm until March 1, 1972, and he was awarded all of the farm machinery, equipment, and livestock. In Newton v. Newton, 188 Neb. 242, 196 N. W. 2d 116, this court said: "A judgment of a trial court fixing the amount of alimony will not be disturbed on appeal unless good cause is shown." We cannot say that the defendant has shown good cause why the provision for the award to each party of an undivided one-half interest in the real estate should be modified.

With reference to the allowance of attorney's fees, the court must consider the fact that defendant's obstinate refusal to employ counsel during the trial of this action in district court, and the resultant bill of exceptions containing 1,054 pages of testimony and 153 exhibits, of necessity caused an unusual and extensive expenditure of time and effort by plaintiff's counsel in

this appeal. Plaintiff is allowed $2,000 for the services of her attorney in this court.

We affirm the judgment of the trial court.

AFFIRMED.